SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

## SUCV2015-00489
## Freeman v Amquip Crane Rental LLC et al

| File Date | 02/23/2015 | Status | Disposed: transfered to other court (dtrans) |
|---|---|---|---|
| Status Date | 04/07/2015 | Session | A - Civil A, 3 Pemberton Sq, Boston |
| Origin | 1 - Complaint | Case Type | B04 - Other negligence/pers injury/pro |
| Track | F - Fast track | Lead Case | |

Jury Trial    Yes

### DEADLINES

| | Service | Answer | Rule12/19/20 | Rule 15 | Discovery | Rule 56 | Final PTC | Judgment |
|---|---|---|---|---|---|---|---|---|
| Served By | | | 06/23/2015 | 06/23/2015 | 12/20/2015 | 01/19/2016 | | |
| Filed By | 05/24/2015 | 06/23/2015 | 07/23/2015 | 07/23/2015 | | 02/18/2016 | | 12/14/2016 |
| Heard By | | | 08/22/2015 | 08/22/2015 | | | 06/17/2016 | |

### PARTIES

**Plaintiff**
Alissa Freeman
Active 02/23/2015

Private Counsel 289990
George F. Leahy
Law Office of George F Leahy
PO Box 15
West Boxford, MA 01885-0015
Phone: 978-686-5600
Fax: 978-686-5600
Active 02/23/2015 Notify

**Defendant**
Amquip Crane Rental LLC
Served: 03/11/2015
Served (answr pending) 03/30/2015

Private Counsel 641626
Peter J Barrett, Jr.
Zelle Mc Donough LLP
101 Federal Street
14th Floor
Boston, MA 02110-1817
Phone: 617-742-6520
Fax: 617-742-1393
Active 04/07/2015 Notify

**Defendant**
Tower Group Companies/Tower Ins Co
Served: 03/23/2015
Served (answr pending) 03/27/2015

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 02/23/2015 | 1.0 | Complaint & jury demand |
| 02/23/2015 | | Origin 1, Type B04, Track F. |
| 02/23/2015 | 2.0 | Civil action cover sheet filed (n/a) |
| 03/27/2015 | 3.0 | Affidavit of compliance with long-arm statute with proof of service on out of state defendant Tower Group Companies/Tower Ins Co (Certified mail delivered 3/23/15) |
| 03/30/2015 | 4.0 | SERVICE RETURNED: Amquip Crane Rental LLC(Defendant) (in hand on 3/11/15) |

MASXP-20110425
langbei

Case 1:15-cv-11520-MRK Document 11 Filed 04/16/15 Page 2 of 62

Commonwealth of Massachusetts
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

04/15/2015
09:17 AM

## SUCV2015-00489
## Freeman v Amquip Crane Rental LLC et al

| Date | Paper | Text |
|------|-------|------|
| 03/31/2015 | 5.0 | Supplementa Affidavit & return receipt of compliance of George F Leahy |
| 04/03/2015 | 6.0 | Plaintiff Alissa Freeman's MOTION to default, Amquip Crane Rental LLC (w/o opposition) |
| 04/06/2015 | | Copy of Petition for Removal to US Dist Court of defendant, AmQuip Crane Rental, LLC (US Dist#15-cv-11520) |
| 04/07/2015 | | CASE REMOVED THIS DATE TO US DISTRICT COURT OF MASSACHUSETTS |

### EVENTS

I HEREBY ATTEST AND CERTIFY ON
April 15, 2015 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
Asst. Clerk

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                              SUPERIOR COURT DEPARTMENT
                                                          CIVIL ACTION NO.: 2015-00489

| | |
|---|---|
| ALISSA FREEMAN )<br><br>    Plaintiff )<br><br>    v. )<br><br>AMQUIP CRANE RENTAL, LLC, and )<br>TOWER GROUP COMPANIES/TOWER )<br>INSURANCE COMPANY/(NBIS )<br>Construction & Transport Insurance )<br>Services, Inc. (Third-party claims )<br>administrator) )<br><br>    Defendants ) | US Dist. #  15-CV-11520 |

### <u>NOTICE OF FILING NOTICE OF REMOVAL</u>

PLEASE TAKE NOTICE that a Notice of Removal, a copy of which is annexed hereto at

Tab 1, removing the above-captioned action from the Superior Court of the Commonwealth of

Massachusetts, Suffolk County, to the United States District Court for the District of

Massachusetts, Eastern Division, was filed on April 6, 2015 with the Clerk of said District Court

pursuant to the provisions of 28 U.S.C. § 1441 and § 1446.

Respectfully submitted,

Defendant,
AMQUIP CRANE RENTAL, LLC,
By its attorney,

Peter J. Barrett, Jr. (BBO# 641626)
Zelle McDonough & Cohen, LLP
101 Federal Street, 14th Floor
Boston, MA 02110
Ph: 617-742-6520
Fx: 617-742-1393
pbarrett@zelmcd.com

Dated: April 6, 2015

## CERTIFICATE OF SERVICE

I, Peter J. Barrett, Jr., hereby certify that a copy of the foregoing document was served this

6th day of April, 2015, via first class mail upon the following:

George F. Leahy, Esq.
The Law Office of George F. Leahy, Esq.
P.O. Box 15
West Boxford, MA 01885

Peter J. Barrett, Jr.

I HEREBY ATTEST AND CERTIFY ON
April 15, 2015 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
Asst. Clerk

2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALISSA FREEMAN<br>    Plaintiff,<br><br>v.<br><br>AMQUIP CRANE RENTAL, LLC<br>and TOWER GROUP COMPANIES/<br>TOWER INSURANCE COMPANY/<br>NBIS Construction & Transport Insurance<br>Services, Inc. (third party claims administrator)<br>    Defendant. | )<br>)<br>)<br>)<br>)    Civil Action No.:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §1446(a), AmQuip Crane Rental, LLC ("AmQuip") submits this notice of removal of the above-captioned action from the Superior Court of Massachusetts, Suffolk County, to the United States District Court for Massachusetts, Eastern Division, and respectfully states as follows:

1.    AmQuip has been served with a Summons and Complaint in an action entitled *Alissa Freeman v. Amquip Crane Rental, LLC, et al.,* Civ. Action No. SUCV2015-00489A in the Superior Court of Massachusetts, Suffolk County (hereinafter the "state court action"). A copy of the Complaint received is attached hereto at Exhibit A.

2.    Plaintiff, Alissa Freeman ("Freeman") filed the state court action on February 23, 2015. Freeman served her Complaint on AmQuip on or about March 7, 2015.

3.    This removal of the state court action is made pursuant to the provisions of Title 28, United States Code, §1441(a) and (b). The United States District Court for the District of Massachusetts has original jurisdiction over this action because it is a civil action wherein the amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, is

between citizens of different states, the defendants are not citizens of the state in which the action is brought, and the cause of action arises out of a dispute involving a contract issued in Massachusetts.

4.     As alleged in the complaint, Freeman is a Massachusetts resident with a domicile at 7 Wellington Street, Boston, MA 02118, Suffolk County.

5.     As alleged in the complaint, AmQuip is a foreign limited liability company with a principal place of business at 1150 Northbrook Drive, Suite 100, Trevose, PA. AmQuip is, in fact, a Pennsylvania limited liability company with a registered business office of 777 Winks Lane, Bensalem, PA 19020.

6.     As alleged in the complaint, Tower Group Companies/Tower Insurance Company is an insurance company with a principal place of business at 120 Broadway, New York, NY 10271.   Upon information and belief, AmQuip states that "Tower Group Companies/Tower Insurance Company" is a misnomer, and that the party sought to be impleaded under such name is, in fact, Tower Insurance Company of New York, which is a business domiciled in New York with a principal place of business at 120 Broadway, New York, NY 10271.   Tower Insurance Company of New York has indicated that it consents to the removal of this action.

7.     As alleged in Plaintiff's Rule 29 Statement accompanying the Complaint, Freeman is seeking damages of no less than $159,000, an amount in excess of the sum or value of $75,000, exclusive of interest and costs.

8.     The United States District Court for the District of Massachusetts is the District Court for the United States encompassing the place where the action is pending, and is the Court

to which this action may be removed pursuant to 28 U.S.C. §1441.

Defendant,
AMQUIP CRANE RENTAL, LLC
By its Attorneys,


 /s/ Peter J. Barrett, Jr.
Francis J. Deasey, Esq.
Deasey, Mahoney, Valentini & North, Ltd.
1601 Market Street, 34th Floor
Philadelphia, PA 19103
215-587-9400 (Phone)
215-587-9456 (Fax)
fjdeasey@dmvnlaw.com
(*pro hac vice* admission to be sought)

Barbara A. O'Donnell, Esq. (BBO #: 544458)
Peter J. Barrett, Jr., Esq. (BBO #: 641626)
Zelle McDonough & Cohen, LLP
101 Federal Street, 14th Floor
Boston, MA 02110
Ph: 617-742-6520
Fx: 617-742-1393
bodonnell@zelmcd.com
Dated: April 6, 2015                pbarrett@zelmcd.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2015, a true and correct copy of defendant's Notice or

Removal was filed with the Clerk of Court using the CM/ECF system, which will send

notification of such filing to the CM/ECF counsel of record.

 /s/ Peter J. Barrett, Jr.
Peter J. Barrett, Jr., Esq.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.: 2015-    15-0489 A

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ALISSA FREEMAN,
    Plaintiff

vs.

AMQUIP CRANE RENTAL, LLC, and
TOWER GROUP COMPANIES/TOWER INSURANCE COMPANY /(NBIS
Construction & Transport Insurance Services, Inc. (third-party claims administrator)
    Defendants

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S COMPLAINT

1.    The plaintiff, Alissa Freeman, is a resident of 7 Wellington Street, Boston, MA 02118, Suffolk County.

2.    The defendant, Amquip Crane Rental, LLC, is a Foreign Limited Liability Company registered in Massachusetts on September 10, 2008, Identification Number: 000985851 with a principle office and a usual place of business at 1150 Northbrook Drive, Suite 100, Trevose, PA 19053 with business locations at P.O Box 8500-2945, Philadelphia, PA 19178-2945 and in Massachusetts at 295 W. First Street South Boston, MA 02127, County of Suffolk, who at all times material hereto contracted on or about on October 8, 2014 for a crane, operator, and oiler under order number 312318 (*Attached*).

## FACTS

3.    Alissa Freeman was employed by Greenwood Industries, P.O. Box 2800, Worcester, MA 01613 as a union journeyman.

4.    On October 8, 2013 Alissa Freeman was working at the Boston Wharf Tower, Melcher Street, Boston, MA 02127.

5.    An order was placed on October 8, 2013 for a crane and operator and oiler under order number 312318 (*Attached*).

6.       It appears the crane operator was *Peter Hudson* #3110, and the oiler was *James J. Collins* # 3953; The onsite supervisor was *Jay Boshman* and the safety officer was *Harry*.

7.       At approximately 2:00 p.m. on October 8, 2014 Ms. Freeman was standing on a truck and had just finished strapping a load to be transported to the roof; her back was to the crane operator facing the load; the operator was to lift the load approximately one foot so as to put the dunnage on top of the load; as this started, the load started to swing toward the back of the truck; Ms. Freeman reached to grab the back of the truck to get off and out of the way of the swinging load when the load came down on her left major hand crushing it between the load and the rack bars of the truck; the accident was witnessed by *Leeford Lox*.

8.       Alissa Freeman has been treated for her injuries at the Boston Medical Center under the care of Paul Tornett, III, M.D. a hand specialist; she sustained a left distal radius fracture with casting and subsequent occupational therapy and physical therapy for her digits, wrist and forearm; the November 6, 2014 report of Bruce Leslie, MD indicates a permanent restriction.

9.       It is Alissa Freeman's intention to hold Amquip Crane Rental, LLC fully responsible for her injuries and damages.

10.      Evidence of the violation of safety standards or regulations promulgated by governmental organizations, or by the defendant is some evidence of negligence. Torre v. Harris-Seybold Co., 9 Mass. App. 660, 404 N.E. 2d 96, 105 (1980); Campbell v. Leach, 352 Mass. 367, 225 N.E. 2d 594, 597 (1967). Liacos, Handbook of Massachusetts Evidence, Fifth Edition, 1981, p. 286.

11.      The crane operator and oiler carelessly and negligently failed to rig the load properly by lifting the load a few inches off the ground first to ensure that no swing developed and that the load is completely secure; and failing to attach tag lines[1] for loads which might be susceptible to swing.

---

[1] When a crane lifts an object, it can swing into objects around it, into power lines or, by swinging, create hazards to personnel on the ground. **Taglines**, long ropes attached to the load, allow ground personnel to pivot the load as it swings on the crane's hook, so that it doesn't collide with objects around it.OSHA defines taglines as made from soft, fiber lines. Fiber lines, such as those made from nylon, polypropylene or natural fiber, such as sisal, don't present the hazards of wire rope. A wire rope's strands may break. The fishhook-shaped broken ends of the strands can cause serious injury to inadequately gloved personnel. A wire rope also conducts electricity and presents a shock hazard if it contacts a live electrical system.

12.      *Title 29, Section 1926.953(d)[2] of the Code of Federal Regulations requires taglines on any load "where hazards to employees exist" in order to keep the loads under control.* When a load is lifted from the ground, it can pivot around the crane line that's being used to lift it. Uncontrolled pivoting may cause the load to bump into things around it, such as the boom of the crane, other loads or hazardous equipment, such as electrical stations. As the load nears a fixed object, it creates a pinch-point, a place where a person may become trapped or injured. The tagline allows personnel on the ground to turn the load as necessary to prevent damage to surrounding equipment or personnel.

13.      CAMD Safety and MSDS require:

Once the crane has been established to be working properly, rig the load properly, **attaching tag lines for loads which might be susceptible to swing.** Always ascertain that the area over which the load will travel, is free and clear of personnel or other potential obstacles.

**Rigging**

- o   Loads should be well secured.
- o   Slings should be adequate to the task.
- o   Slings should be unkinked and load balanced and secured.
- o   No sudden stops.
- o   No obstructions while lifting or traveling.
- o   No loose items on load or crane before lift.
- o   Bumping into runway stops is prohibited.
- o   Hoist line must be vertical prior to the lift (remove slack in the hoist slowly).
- o   No crane load should pass overhead of personnel, clear the area before making the lift.
- o   No one is to ride the crane without permission.

The most important job of any crane operation is rigging of the load. Poor rigging may result in personnel injury, property damage, or other serious hazards. Rigging is the most time consuming of any crane operation and represents the single most hazardous potential of crane

---

[2] **§ 1926.954 29 CFR Ch. XVII (7–1–10 Edition)**
(2) Precautions shall be exercised to
prevent blocking of roadways or endangering
other traffic.
(3) When hauling poles during the
hours of darkness, illuminated warning
devices shall be attached to the trailing
end of the longest pole.
(c) *Storage.* (1) No materials or equipment
shall be stored under energized
bus, energized lines, or near energized
equipment, if it is practical to store
them elsewhere.
(2) When materials or equipment are
stored under energized lines or near energized
equipment, applicable clearances
shall be maintained as stated in
Table V–1; and extraordinary caution
shall be exercised when moving materials
near such energized equipment.
**(d) *Tag line.* Where hazards to employees
exist tag lines or other suitable
devices shall be used to control loads
being handled by hoisting equipment.**

operation. In a multi-sling operation, each leg must be of the same length and must contribute equally to load distribution. Nylon slings are susceptible to damage by sharp corners on the item to be rigged. Caution must be taken to ensure that slings are not damaged by sharp corners or by excessive loading. Rigging requires years of practice to perfect. If in doubt about the security of your rigging, ask for help.

**Rigging should be checked by lifting the load a few inches off the ground to ensure that no swing develops and that the load is completely secure. Remember it is important to take the time to accomplish this task correctly. Not doing so may result in catastrophic consequences.** One of the most important things to check before lifting a load is to look for loose items, such as screws or tools which may have been used to secure the load. Such items can become projectiles during a lift. This is the reason why crane operators or especially **tag line** operators should wear hard hats when operating the crane and why it is essential to make sure the path of the crane does not pass over the head of any individual.

**Crane and Rigging Safety Rules**

- o   Check limit switches before rigging the load.
- o   Make sure the load does not exceed rated capacity.
- o   Know the center of gravity of the load.
- o   Attach load above the center of gravity for stability.
- o   Select hitch that will control the load.
- o   Know the rated capacities of rigging and slinging.
- o   Inspect all rigging before use.
- o   Protect the sling from sharp corners.
- o   Allow for increased tension due to sling angle.
- o   Equalize loading on multiple leg slings.
- o   Allow for load reductions when using choker hitches.
- o   **Attach tag line prior to lift.**
- o   Keep personnel clear of lift area.
- o   Wear hard hats when making overhead lifts.
- o   Lift load a few inches and verify rigging.
- o   Check for any loose items.
- o   Know limitations of hoisting device.
- o   Start and stop SLOWLY! Watch for obstructions (not only hook and load but outboard end of the bridge).
- o   Check pathway is clear before making a lift (use a spotter for blind spots).
- o   Verify hook completely closes.
- o   Use appropriate hand signals.
- o   Maintain load control at all times.
- o   Report suspected drum wrappings immediately (if drum has fewer 2.5 wraps remaining).
- o   Never leave load unattended.

## COUNT I

### (Alissa Freeman v. Amquip Crane Rental, LLC)

### (Negligence)

14.     The plaintiff incorporates by reference and restates *paragraphs 1 to and including paragraphs 13* above.

15.     The defendant, Amquip Crane Rental, LLC had a common law, statutory, and contractual duty, <u>Corsetti v. Stone, Co.</u>, 396 Mass 1, 11 n.8, 483 NE2d 793 (1985); <u>Banaghan v. Dewey</u>, 340 Mass 73, 162 NE 2d 807 (1959); <u>Kushner v. Dravo Corp.</u>, 339 Mass 273, 158 NE 2d 858 (1959) which it breached and a duty to warn of any dangers that might arise which are not likely to be known to Alissa Freeman.

16.     The defendant, Amquip Crane Rental, LLC, carelessly and negligently breached its duty(ies).

17.     The legal liability and damages of Alissa Freeman are reasonably clear.

18.     The plaintiff, Alissa Freeman, was at all pertinent times using due and reasonable care for her own safety.

19.     The injuries sustained by the plaintiff, Alissa Freeman, were the direct and proximate result of the negligence and carelessness of the defendant, Amquip Crane Rental, LLC, (*with actual and/or constructive notice*) as follows:

  a. the defendant negligently failed to safely and properly maintain, inspect manage and care for its location of operation, equipment and fixtures thereon, i.e. the crane, crane operator and oiler;

  b. the defendant negligently created a dangerous condition to exist and negligently failed to correct said condition or remove the causes thereof although the defendant knew or in the exercise of reasonable care should have known of the dangerous condition;

  c. the defendant failed to warn of the presence of the dangerous condition at said location of operation, equipment, and fixtures thereon although the defendant knew or in the exercise of reasonable care should have known of said condition;

  d. the defendant negligently ran and operated the crane via the crane operator and oiler;

  e. plaintiff's injury was proximately caused by such an accident within the zone of risk; and

  e. other ways to be shown at trial.

   20. As a direct and proximate result of the negligence of the defendant, Amquip Crane Rental, LLC, the plaintiff, Alissa Freeman, was caused to sustain severe and permanent personal injuries:

    a. <u>Cuddy v. L& M Equipment Co.</u>, 352 Mass. 458, 22 N.E. 2d 904 (1967);Smith, "Damages for Personal Injury and Death", 1969 Ann. Surv. Mass. Law,

§6.3;Doherty v. Ruiz, 302 Mass. 145, 18 N.E. 2d 542 (1939);Her workers' compensation weekly indemnity rate is $811.00 with an average weekly wage of $1,351.66; she has continued to lose $1,351.66 per week from October 8, 2013 *to date.*

       b.     As of September 26, 2014 M.G.L. c. 152, section 15 workers' compensation lien from AIG was $41,333.83 comprised of $39,068.88 in indemnity and $2,264.95 in medical.

       c.     Alissa Freeman (DOB 8/27/1965) age 49 is entitled to recover for these injuries for the balance of her life expectancy; so at age of 49, she has a future life expectancy of 31.8 years as a black female. National Vital Statistics Report, 2009, Volume 62, Number 7- Fed. R. Evid. 902- January 6, 2014); if the jury were to award her the sum of $5,000.00 per year for this permanency assuming the discount rate to present value equals the inflation rate, she would be entitled to a recovery, in addition to pain and suffering and his specials of $159,000.00.

       **WHEREFORE**, the plaintiff, Alissa Freeman, states no ad damnum pursuant to M.G.L. c. 231, §13B and demands judgment against the defendant, Amquip Crane Rental, LLC, in an amount to fairly and adequately compensate her for her injuries and damages, together with interest, costs and attorney's fees.


## COUNT II

### (Alissa Freeman v. Tower Group Companies/Tower Insurance Company)

### (M.G.L. c. 93A, sec 2, 9 et seq. and M.G.L. c. 176D, sec. 3(9)

21.    The plaintiff, Alissa Freeman, is a resident of 7 Wellington Street, Boston, MA 02118, Suffolk County.

22.    The defendant, Tower Group Companies/Tower Insurance Company is a liability insurer under M.G.L. c. 175, section 113C with a usual and principal place of business at 120 Broadway, 31st Floor, New York, NY 10271.

23.    The plaintiff restates and incorporates by reference *paragraphs 1 to and including 20* above herein.

24.    At all times material hereto, the defendant, Tower Group Companies/Tower Insurance Company, and its affiliates, under the terms of its insurance contract insured, Amquip Crane Rental, LLC, for a legal defense and indemnification under a Comprehensive General Liability, policy *1 million* per occurrence, with excess coverage of *27 million* dollars, in the pending tort action and claims of the plaintiff, Alissa Freeman, and had a duty of reasonable performance that was separate from its contractual obligation to defend.

25.     At all times relevant to the Complaint, defendant was in the business of insurance, including selling policies of insurance against certain risks of loss and as a liability insurer under M.G.L. c. 175, section 113C and is subject to the terms and provisions of the implied covenant of good faith and fair dealing in insurance contracts, the common law duty of the reasonable objective or good faith insurer, precluded from opportunistic post-claim underwriting, and the absence of subjective bad faith in claims decisions, M.G.L. c. 176D §3(9) relative to the settlement and handling of claims inclusive of those claims as made by the plaintiff in this action, whose claims can also be asserted as a third-party beneficiary. Flattery v. Gregory, 397 Mass. 143, 150-151, 489 N.E. 2d 1257 (1986); Rae v. Air-Speed, Inc., 386 Mass. 187, 196, 435 N.E. 2d 628 (1982); *Restatement (Second) of Contracts,* section 309 (1981); Cheryl A. Seney v Prudential Property and Casualty Insurance Company, C.A. No. 94-0264A (Dec. 23, 1997), 1997 WL 835052 (Mass. Super.)

26.     The legal liability for this accident is *reasonably clear* or *highly likely*.

27.     That demand was made on behalf of the Plaintiff by letters of **September 11, 2014** and **October 22, 2014** letters (**Exhibit A**) (*written demand for relief*) to Defendant insurer.

28.     That the defendant insurer has made no good faith offer of settlement, and did not timely respond to the plaintiff's written demand for relief within 30 days, York, 369 Mass. at 163-164, as set forth in *paragraph 27* above, has proffered no good faith expert on the issue of causation, State Farm Lloyd's v. Nicolau, 951 S.W. 2d 444, 448-50 (Tex. 1997), knew or should have known that the expert report "*was not objectively prepared*" or because "*the insurer's reliance on the report was unreasonable.*", has proffered no legal opinion to support its position, and has offered insufficient and unreasonable monies despite the clear damages and reasonably clear legal liability of its insured(s).

29.     That the defendant, Tower Group Companies/Tower Insurance Company, and its affiliates, is subject to the terms and provisions of M.G.L. c. 176D §3(9) relative to the settlement and handling of claims inclusive of those claims as made by the plaintiff in this action.

30.     Tower Group Companies/Tower Insurance Company has refused to accepted legal liability despite written requests to do so. O'Leary-Alison v. Metropolitan Property & Casualty Insurance Co., 52 Mass. App. Ct. 214, 217-19 (2001).

31.     Alissa Freeman's claims could always be asserted as a third-party beneficiary to the subject insurance contracts with Tower Group Companies/Tower Insurance Company; Flattery v. Gregory, 397 Mass. 143, 150-151, 489 N.E. 2d 1257 (1986); Rae v. Air-Speed, Inc., 386 Mass. 187, 196, 435 N.E. 2d 628 (1982); *Restatement (Second) of Contracts,* section 309 (1981).

32.     The insurance contracts with Tower Group Companies/Tower Insurance Company was relied upon by Alissa Freeman and the named insured, Amquip Crane Rental, LLC, to use this insurance as a safety net for catastrophic injuries and damage losses by providing them with finacial security in the event of a covered loss.

33.     The concious actions of Tower Group Companies/Tower Insurance Company to hold on to its monies under this insurance contract was a direct detriment to the named insured, Amquip Crane Rental, LLC, and Alissa Freeman, by forcing them into unnecessary litigation to obtain relief; Tower Group Companies/Tower Insurance Company, individually and through its agents, servants and employees, NBIS Construction & Transport Insurance Services, Inc.[3] (*third-party claims administrator*), opted to follow the unfair practive of *delay and ignore* for month after month, year after year, even when liability was reasonably clear, despite the enhanced punative damages afforded by statute since 1989.

34.     That the legal liability of the tort defendants and the scope of the Plaintiffs damages has been "*reasonably clear*" , "*highly likely*" and " *apparent*" within the meaning of M.G.L. c. 176D and §3(9)(f) since no later than the submission of a the settlement demand letter to defendant as set forth in *paragraph 27* above.

35.     Tower Group Companies/Tower Insurance Company, as the primary insurer, breached its duties the excess insurance carrier in this matter. Hartford Casualty Ins. Co. v. New Hampshire Ins. Co., 417 Mass. 115, 628 N.E. 2d 14 (1994).

36.     That the plaintiff has satisfied all the requirements of presentment of her claims as required under M.G.L. c. 93A and c. 176D.

37.     That Tower Group Companies/Tower Insurance Company, and its affiliates, conduct in regard to the plaintiff's claim is in violation of Massachusetts General Law c. 176D, § 3(9);

        **WHEREFORE,** the plaintiff, Alissa Freeman, prays that this Honorable Court:

1.     Determine the applicability of M.G.L. c. 176D to the plaintiff's claim herein as the result of the defendant, Tower Group Companies/Tower Insurance Company, and its affiliates/ agents, servants and employees, providing insurance benefits to the tort defendant via the insurance contract;

2.     Determine that the insurer defendant's handling of plaintiff's claim was violative of M.G.L. c. 176D §3(9).

---

[3] NBIS Construction & Transport Insurance Services, Inc.
Risk Management
2859 Paces Ferry Road
Suite 800
Atlanta, GA 30339

3.      Determine that the insurer defendant's violation of M.G.L. c. 176D §3(9) is actionable pursuant to M.G.L. c. 93A in that the defendant's handling of the plaintiff's claim is tantamount to unfair or deceptive act or practice in contravention of M.G.L. c. 93A §2 and M.G.L. c. 176D, sec 3(9).

4.      Award the plaintiff damages plus costs, interest and attorney's fees pursuant to M.G.L. c. 93A §9(3).

5.      Determine that the defendant's violation of M.G.L. c. 93A §2 "*... was a willful or knowing violation of said section two or.... in bad faith with knowledge or reason to know that the act or practice complained of violated said section two*" as provided in M.G.L. c. 93A, §2, 9.

6.      Determine that the actual amount of damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction and occurrence regardless of the existence of insurance coverage available in payment of the claim under M.G.L. c. 93A §9(3) as amended by c. 580 of the 1989 regular session.

7.      Treble the damage award to the plaintiff pursuant to M.G.L. c. 93A §9, plus award plaintiff his costs, interest, and treble attorney's fees.

8.      Award interest consistent with the September 28, 2007 Appeals Court's decision on *Siegel v Berkshire Life Insurance Co., 06-P-1659, Lawyers Weekly No. 11-238-07,* See: *Rhodes v. AIG Domestic Claims*, SJC-10911, February 10, 2012- not loss of use of funds but a multiplier of judgment; *Linda Gore v. Arbella Mutual Insurance Company,* August 30, 2010, Mass. App. Ct. No. 09-P-56, *Sheehan v. Weaver*, Northern Housing Court, Docket No. 08-CV-0135, Feb. 10, 2012.

9. Award such further relief as is merited and just in the circumstances.

***THE PLAINTIFF DEMANDS A TRIAL BY JURY ON EACH AND EVERY ISSUE RAISED HEREIN PURSUANT TO MASS. R. CIV. P. 38 AND THE MASSACHUSETTS DECLARATION OF RIGHTS, AND REQUESTS A TRIAL BY JURY ON ALL FACTUAL ISSUES MATERIAL TO CLAIMS NOT TRIALBLE TO A JURY PURSUANT TO MASS. R. CIV. P. 38(c)***

Dated: February 17, 2015

The plaintiff, Alissa Freeman, by her attorney,

George F/ Leahy, Esq.
BBO#: 289990
The Law Office of George F. Leahy
P.O. Box 15
West Boxford, MA 01885-0005
Phone: (978) 686-5600

I HEREBY ATTEST AND CERTIFY ON April 15, 2015 , THAT THE FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE, AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:
Asst. / Clerk

# AmQuip
**THE CRANE PEOPLE**

INVOICE   459123   PAGE: 1

OCT 23 REC'D

800/ 355-3200 - Fax: 617/ 268-3437   **Account #**   21361

6 to 550 ton Cranes
Hydraulic - Crawler -Truck - All Terrain - Tower
Rigging & Heavy Hauling

**SOLD TO:**

GREENWOOD INDUSTRIES
P.O. BOX 2800
WORCESTER MA 01613

**JOB SITE:**

BOSTON WHARF TOWER
MELCHER ST.
BOSTON MA 02127

| INVOICE DATE | CUSTOMER PURCHASE ORDER # | SALES # | AMQUIP ORDER# | ORDER DATE | TERMS |
|---|---|---|---|---|---|
| 10/17/13 | | 92 | 312318 | 10/08/13 | NET 30 |

Equip #: 12401   Return Date: 10/08/13   Model Type: ALL TERRAIN CRANE
Requested Capacity: 240.0 Tons   Ordered By: JOE SOUSA

| Units | Type | From and to Dates | Rate | Amount | Notes |
|---|---|---|---|---|---|
| 11.00 | HOURLY | 10/08/13-10/08/13 | 440.00 | 4,840.00 | |
| 1.00 | FREIGHT | 10/08/13-10/08/13 | | 1,500.00 | ROUND TRIP |
| 11.00 | FUEL | 10/08/13-10/08/13 | 9.00 | 99.00 | |
| 11.00 | WAGE HOURS | 10/08/13-10/08/13 | 200.00 | 2,200.00 | CREW |
| 3.00 | WAGE DT | 10/08/13-10/08/13 | 140.00 | 420.00 | CREW |
| | MA SLS TAX | 10/08/13-10/08/13 | % 6.250 | 302.50 | |

TOTAL CHARGES:   $9,361.50



---

## TERMS AND CONDITIONS

1. Notification of any invoice discrepancy must be made in writing to AmQuip Crane Rental LLC. d/b/a Shaughnessy Amquip, within 10 days of invoice date or customer thereby expressly accepts said charg being fair and just.

2. All prices quoted herein are exclusive of any city, state, or federal taxes, or any other taxes incurred in connection with the use or operation of crew and/or equipment. Whenever applicable, a separate charge may be made for such taxes, but if not billed, customer remains solely responsible for payment directly to the applicable taxing authority.

3. No waiver of or changes in the terms and conditions of this agreement shall be binding upon AmQuip Crane Rental LLC unless in writing signed by an authorized officer of AmQuip Crane Rental LLC.

4. Customer expressly agrees to pay any legal fees or other expenses incurred by AmQuip Crane Rental LLC in connection with the collection of any amounts due hereunder in addition to that sum.

5. In addition to the above, acceptance of this invoice also acknowledges and accepts all conditions set forth on corresponding applicable rental agreements.

6. All invoices not paid when due are subject to carrying charges of one percent a month.

7. Proof of sales tax exemption must be submitted within 15 days of initial invoicing on any order.

**PLEASE REMIT PAYMENT TO: AmQuip Crane Rental LLC, P.O. Box 8500-2945, Philadelphia, PA 19178-2945**

**AmQuip**
THE CRANE PEOPLE

Office #
617-268-8600

Fax #
617-260-1059

AmQuip Crane Rental LLC   RENTAL AGREEMENT

HOURLY

| ORDER # | DAY | DATE 07:30 | EQUIP # | PICK UP LOCATION |
|---|---|---|---|---|
| 312318 | Tuesday | 10/08/13 | 124-61 | BOS  BOS - BOSTON    BOS  BOS - BOSTON |

CUSTOMER NAME/ADDRESS
21361 GREENWOOD INDUSTRIES P.O. BOX 2800 WORCESTER MA

JOB SITE NAME/ADDRESS
0606 BOSTON WHARF TOWER MELCHER ST. BOSTON MA 02127

DIRECTIONS

JOB SITE CONTACT:   0000000000

NOTE:

| CAP. | EQ TYPE | BOOM | JIB | WEIGHT | RADIUS | OFFSET | WORK TO BE PERFORMED |
|---|---|---|---|---|---|---|---|
| 240.0 | AT | 197 | 72 | 4000 | 1 | | ROOFING PAVERS ETC |

RIGGING

ACCESSORIES

Customer, by its duly authorized agent, hereby rents a crane, equipment and crew to handle its own or others' materials (the "Work"). Any person executing this Agreement warrants that he/she has the authority to bind Customer to this Agreement's Terms and Conditions. Customer affects that there is a turnover commitment and noise customer breakdown. Customer agrees that all provisions of this agreement are separate, severable and the impairment of any clause or provision hereof by application of law or public policy shall not impact or limit any other term, provision or clause hereof.

Standard full daily rates apply on all rentals which are on a "portal to portal" basis from and in AmQuip. A day constitutes a one time between the hours of 8:00 a.m. and 4:30 p.m., less a 12:00 noon to 12:30 p.m. lunch period. There are no "PORTION OF DAY" rentals. Time prior to 8:00 a.m., after 4:30 p.m., and during its lunch rental constitutes overtime, chargeable in proportion to daily rate and in compliance with established union regulators and procedures. When the work extends beyond such day, all succeeding work days start at 8:00 a.m. at the job site, after the last day of rental. Customer agrees that AmQuip is not responsible and Could not assumes personal liability for any delays, cause time, strikes, breakdowns, weather, acts of God or any other condition beyond AmQuip's control. In cases when due is paid within thirty (30) days of billing, Customer agreeing time is of the essence. Any bill not so paid will accrue 1% per month interest, equal to 12% annually. Customer authorizes the Prothonotary or Clerk or any cabinet of any Court of Record of Massachusetts to appear for and to confess judgment against Customer after any invoice for this Agreement is thirty (30) days past due, for the full amount of this invoice or any part thereof, with tax and post-judgment interest at 1% per month equal to 12% annually; together with cost of suit, without stay of execution and with attorney fees of 15% for collection thereof, Customer waives and releases all claim from any and all appraisement, stay of exemption laws of any state, of the United States, now in force or which may hereafter be past, and voluntarily waives his due process rights to prior notice and/or hearing under the U.S. and all state constitutions.

INDEMNIFICATION. Customer agrees to defend, indemnify and save harmless AmQuip, its employees and agents from all claims for death or injury to persons, including but not limited to employees, agents or servants of AmQuip, Customer and 3rd parties, or all loss, damage or injury to property, including the equipment, arising directly, indirectly or in any manner out of Customer's work, use operation or possession of the crane, equipment and crew. Customer's duty to defend and indemnify hereunder shall include all costs or expenses arising out of all claims specified herein, including all common arbitration costs, filing fees, attorney fees and cost of settlement. Customer shall be required to defend and indemnify AmQuip for AmQuip's own negligence or fault, whether the negligence or fault is active or passive, indirect or derivative in nature and whether the damages claimed are caused in whole or in part by the acts, errors or omissions of AmQuip or its employees together with any claims in breach of express or implied or strict/active product defect.

WAIVER OF WORKERS COMPENSATION IMMUNITY. Customer agrees that this Crane Rental Agreement was entered into upon the express request of the Customer. Notwithstanding the date of the Authorized Signature below, this agreement and the indemnification provisions contained herein shall be deemed to have been executed on the date of the Customer's request or the date of delivery, whichever is the earlier, and shall be further deemed to have been executed prior to the date of any occurrence giving rise to an indemnification obligation. Customer's obligations hereunder shall not be limited by the provisions of any Worker's Compensation statute and shall include any claim on account of injury to or death of persons, including the employees of Customer and the Customer and the Customer's subcontractors and suppliers among directly, directly or indirectly out of the work or omissions to act of the Customer in the performance of the work irrespective of whether the party to be indemnified was concurrently negligent, whether actively or passively.

OPERATION OF EQUIPMENT. Customer expressly agrees that all persons operating, repairing or maintaining and assembling/disassembling the crane or equipment under this Rental Agreement are deemed employees borrowed by Customer (borrowed servants) who are operating under the exclusive jurisdiction, supervision and control of Customer for the work to be performed under this Rental Agreement. Customer further agrees that it shall be Customer's duty to give specific instructions and directions to all persons (borrowed servants or otherwise) operating, repairing and maintaining the crane or equipment leased under this Rental Agreement. Customer agrees to provide or otherwise select competent or experienced personnel to direct the operation of the crane and/or equipment and further agrees that the standard of care and responsibilities for all the parties will be in accordance with the standards set forth in the American National Institute (ANSI) and ASME B30.5-2011 (as amended) shall be used when operating the equipment, specifically Chapter 5-3 entitled "Operation", and all applicable OHSA standards.

INSURANCE: Customer agrees to maintain the following insurance coverage prior to the crew's/equipment's arrival at the work site. Contractors shall procure primary non-contributory, commercial general liability insurance on an occurrence basis, including bodily injury and property damage coverage with minimum limits of $1,000,000 for each occurrence and $2,000,000 in the aggregate, name AmQuip as an additional insured on a primary non-contributory basis in the amount of $5,000,000 total primary and excess/umbrella policies must be endorsed so that they are primary non-contributory to all of AmQuip's insurance policies and must include AmQuip as an additional insured. Said coverages must also provide coverage for Customer's defense and indemnification obligations (contractual liability coverage) as contained herein.

The terms of this Agreement are the sole and exclusive agreement between the parties, intended by the parties to be the only and final terms and agreement, and supersedes any and all oral or written understandings as otherwise might have been claimed to have existed, the assertion of which the parties hereby waive. This Rental Agreement shall be construed under the laws of the Commonwealth of Pennsylvania and Customer hereby agrees to submit to the jurisdiction, venue and law of the Commonwealth of Pennsylvania.

| AUTHORIZED SIGNATURE | | DATE | | PRINT NAME | | | |
|---|---|---|---|---|---|---|---|
| STARTING TIME | | ARRIVED ON JOB | | | | C.O.D. | |
| LUNCH START | | LUNCH FINISH | | | | | |
| TIME LEFT JOB | | FINISHING TIME | | | | | |

QUALIFIED SIGNAL PERSON  ☐ YES  ☐ NO

| | | Equip Hrs | | | For Office Use Only | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | PAY | | | BILL | | | |
| | Hours | Reg | Prem | Reg | OT | DT | Reg | OT | DT | Diff | Travel Miles | Escort Miles |
| Operator  3110  PETER HUDON | | | | | | | | | | |
| Operator/Oiler  3953  JAMES J COLLINS | 11 | | | | | | | | | |
| REMARKS | | | | | | | | Manager's Initials | | |

GRAY - AMQUIP'S COPY       AUTHORIZED SIGNATURE                    PRINT NAME

*The Law Office of George F. Leahy*
*P.O. Box 15*
*West Boxford, Massachusetts 01885-0015*
Telephone:  (978) 686-5600  Facsimile:  (978) 686-5600

George F. Leahy*                                        *Also Admitted in Maine
                                                        September 11, 2014

Tower Group Companies
Tower Insurance Company
120 Broadway
31st Floor
New York, NY 10271

**Re: Alissa Freeman v. Amquip Crane Rental, LLC**
**Date of Loss: October 8, 2013 at approximately 2:00 p.m.**
**Amquip Order No.: 312318**
**Insured Employer: Greenwood Industries, P.O. Box 2800, Worcester, MA 01613**
**Locus: Boston Wharf Tower, Melcher Street, Boston, MA 02127**
**W.C. Insurer: Chartis/Granite State Ins. Co.**
**W.C. Claim No. 555-109205**
**W.C. Policy number:** *requested*
**DIA No.:**
**Subject: Tort Claim**

Dear Sir or Madam:

Please consider this letter to be a written demand for relief in accordance with
Massachusetts General Laws, chapter 93A, §9(3), M.G.L. c. 176 D, section 1 et seq./
M.G.L. c. 176D, §3(9) on behalf of the claimant, Alissa Freeman (DOB 8/27/1965) of 7
Wellington Street, Boston, MA 02118  on her claim in connection with personal injuries,
which se sustained on or about October 8, 2013 as to Tower Group Companies/Tower
Insurance Company. See: *Rhodes v. AIG Domestic Claims*, SJC-10911, February 10,
2012- not loss of use of funds but a multiplier of judgment; *Linda Gore v. Arbella Mutual
Insurance Company*, August 30, 2010, Mass. App. Ct. No. 09-P-56.

In technical compliance with M.G.L. c. 93A, §9(3) and Whitney v. Continental
Insurance Company, 595 F. Supp. 939, 942n1, 946n10 (1984), this letter is addressed
directly to your company[1] (*the defendant*) with a copy to your known legal counsel.

---

[1] "[a] lawyer cannot be an agent of his client unless there is express authorization for such conduct."
Devaux v. American Home Assurance Co., 387 Mass. 814 (1983) The issue before the court in Devaux was
whether a secretary of a law firm had actual or implied authority to establish an attorney-client relationship
on behalf of the law firm. See 387 Mass. at 818-19

M.G.L. c. 93A does not afford a provision on a written demand for relief to send same to legal counsel as
opposed to the prospective respondent.

Under such circumstances there is also a very real issue as to current legal counsel's further involvement. See: <u>Mary L. Carta, Admin. v. Lumbermens. Mutual Casualty Co.</u> (U.S. Dist Ct. C.A. No. 03-12237-NG) __ F. Supp. 2d __, 2006 WL 595496 (D. Mass. March 13, 2006) (Collings, J. March 13, 2006). The punitive damage aspects on 93A often are not covered by the original insurance contract and Tower Group Companies/Tower Insurance Company would therefore be responsible for same. When legal counsel acts as the agent of the Tower Group Companies/Tower Insurance Company in written claim responses and mis-states facts and law, the stated violations perpetuates the unfair and deceptive trade practice, it can become liable under principal agent law culpable.

Incorporated by reference are my prior letters of **April 7, 2014**, **May 6, 2014** and **June 6, 2014**. <u>None of which have received any response.</u>

## Undisputed Facts

Alissa Freeman was employed by Greenwood Industries, P.O. Box 2800, Worcester, MA 01613 as a journeyman. She was working at the Boston Wharf Tower, Melcher Street, Boston, MA 02127. An order was placed on October 8, 2014 for a crane and operator and oiler under order number **312318 (*enclosed*)**. It appears the crane operator was *Peter Hudson* #3110, and the oiler was *James J. Collins* # 3953. The onsite supervisor was *Jay Boshman* and the safety officer was *Harry*. At approximately 2:00 p.m. Ms. Freeman was standing on the truck and had just finished strapping a load to be transported to the roof. Her back was to the crane operator facing the load. The operator was to lift the load approximately one foot so as to put the dunnage on top of the load. As this started, the load started to swing toward the back of the truck. Ms. Freeman reached to grab the back of the truck to get off and out of the way of the swinging load when the load came down on her left major hand crushing it between the load and the rack bars of the truck. The accident was witnessed by *Leeford Lox*.

She has been treated for her injuries at the Boston Medical Center under the care of Paul Tornett, III, M.D. a hand specialist. She sustained a left distal radius fracture with casting and subsequent occupational therapy and physical therapy for her digits, wrist and forearm. Medical records are available for your review.

## Liability

It is Alissa Freeman's intention to hold Amquip Crane Rental, LLC fully responsible for her injuries and damages.

Evidence of the violation of safety standards or regulations promulgated by governmental organizations, or by the defendant is some evidence of negligence. <u>Torre v. Harris-Seybold Co.</u>, 9 Mass. App. 660, 404 N.E. 2d 96, 105 (1980); <u>Campbell v. Leach</u>, 352 Mass. 367, 225 N.E. 2d 594, 597 (1967). Liacos, Handbook of Massachusetts Evidence, Fifth Edition, 1981, p. 286.

It is clear the crane operator and oiler failed to rig the load properly by lifting the load a few inches off the ground first to ensure that no swing developed and that the load is completely secure; and failing to attach tag lines[2] for loads which might be susceptible to swing.

**Title 29, Section 1926.953(d)[3] of the Code of Federal Regulations** requires **taglines on any load "where hazards to employees exist" in order to keep the loads under control**. When a load is lifted from the ground, it can pivot around the crane line that's being used to lift it. Uncontrolled pivoting may cause the load to bump into things around it, such as the boom of the crane, other loads or hazardous equipment, such as electrical stations. As the load nears a fixed object, it creates a pinch-point, a place where a person may become trapped or injured. The tagline allows personnel on the ground to turn the load as necessary to prevent damage to surrounding equipment or personnel.

**CAMD Safety and MSDS require:**

---

[2] When a crane lifts an object, it can swing into objects around it, into power lines or, by swinging, create hazards to personnel on the ground. **Taglines**, long ropes attached to the load, allow ground personnel to pivot the load as it swings on the crane's hook, so that it doesn't collide with objects around it.OSHA defines taglines as made from soft, fiber lines. Fiber lines, such as those made from nylon, polypropylene or natural fiber, such as sisal, don't present the hazards of wire rope. A wire rope's strands may break. The fishhook-shaped broken ends of the strands can cause serious injury to inadequately gloved personnel. A wire rope also conducts electricity and presents a shock hazard if it contacts a live electrical system.

[3] **§ 1926.954 29 CFR Ch. XVII (7–1–10 Edition)**
(2) Precautions shall be exercised to
prevent blocking of roadways or endangering
other traffic.
(3) When hauling poles during the
hours of darkness, illuminated warning
devices shall be attached to the trailing
end of the longest pole.
(c) *Storage.* (1) No materials or equipment
shall be stored under energized
bus, energized lines, or near energized
equipment, if it is practical to store
them elsewhere.
(2) When materials or equipment are
stored under energized lines or near energized
equipment, applicable clearances
shall be maintained as stated in
Table V–1; and extraordinary caution
shall be exercised when moving materials
near such energized equipment.
**(d) *Tag line.* Where hazards to employees
exist tag lines or other suitable
devices shall be used to control loads
being handled by hoisting equipment.**

Once the crane has been established to be working properly, rig the load properly, **attaching tag lines for loads which might be susceptible to swing**. Always ascertain that the area over which the load will travel, is free and clear of personnel or other potential obstacles.

**Rigging**

- o  Loads should be well secured.
- o  Slings should be adequate to the task.
- o  Slings should be unkinked and load balanced and secured.
- o  No sudden stops.
- o  No obstructions while lifting or traveling.
- o  No loose items on load or crane before lift.
- o  Bumping into runway stops is prohibited.
- o  Hoist line must be vertical prior to the lift (remove slack in the hoist slowly).
- o  No crane load should pass overhead of personnel, clear the area before making the lift.
- o  No one is to ride the crane without permission.

The most important job of any crane operation is rigging of the load. Poor rigging may result in personnel injury, property damage, or other serious hazards. Rigging is the most time consuming of any crane operation and represents the single most hazardous potential of crane operation. In a multi-sling operation, each leg must be of the same length and must contribute equally to load distribution. Nylon slings are susceptible to damage by sharp corners on the item to be rigged. Caution must be taken to ensure that slings are not damaged by sharp corners or by excessive loading. Rigging requires years of practice to perfect. If in doubt about the security of your rigging, ask for help.

**Rigging should be checked by lifting the load a few inches off the ground to ensure that no swing develops and that the load is completely secure. Remember it is important to take the time to accomplish this task correctly. Not doing so may result in catastrophic consequences.** One of the most important things to check before lifting a load is to look for loose items, such as screws or tools which may have been used to secure the load. Such items can become projectiles during a lift. This is the reason why crane operators or especially **tag line** operators should wear hard hats when operating the crane and why it is essential to make sure the path of the crane does not pass over the head of any individual.

**Crane and Rigging Safety Rules**

- o  Check limit switches before rigging the load.
- o  Make sure the load does not exceed rated capacity.
- o  Know the center of gravity of the load.
- o  Attach load above the center of gravity for stability.
- o  Select hitch that will control the load.
- o  Know the rated capacities of rigging and slinging.
- o  Inspect all rigging before use.
- o  Protect the sling from sharp corners.
- o  Allow for increased tension due to sling angle.
- o  Equalize loading on multiple leg slings.
- o  Allow for load reductions when using choker hitches.
- o  **Attach tag line prior to lift.**
- o  Keep personnel clear of lift area.
- o  Wear hard hats when making overhead lifts.
- o  Lift load a few inches and verify rigging.
- o  Check for any loose items.
- o  Know limitations of hoisting device.

- o  Start and stop SLOWLY! Watch for obstructions (not only hook and load but outboard end of the bridge).
- o  Check pathway is clear before making a lift (use a spotter for blind spots).
- o  Verify hook completely closes.
- o  Use appropriate hand signals.
- o  Maintain load control at all times.
- o  Report suspected drum wrappings immediately (if drum has fewer 2.5 wraps remaining).
- o  Never leave load unattended.

## Workers' compensation lien

Alissa Freeman received workers' compensation benefits and was absent from work from October 8, 2013 *to date*. There will be a workers' compensation lien under M.G.L. c. 152, section 15:

Deborah Matoian
Chartis
P.O. Box 1830
Alpharetta GA 30023

Rosanna Brosseau
Global Recovery Services
P.O. Box 3150
Alpharetta GA 30023
*W.C. Claim No. 555-109205*

## Diminution of Earning Capacity

Cuddy v. L& M Equipment Co., 352 Mass. 458, 22 N.E. 2d 904 (1967);   Smith, "Damages for Personal Injury and Death", 1969 Ann. Surv. Mass. Law, §6.3;Doherty v. Ruiz, 302 Mass. 145, 18 N.E. 2d 542 (1939).

Her wc weekly indemnity rate is **$811.00** which is an average weekly wage of **$1,351.66**. She has continued to lose **$1,351.66 per** week form October 8, 2013 *to date.*

## Permanency

Alissa Freeman (DOB 8/27/1965) age 49 is entitled to recover for these injuries for the balance of her life expectancy. So at age of **49**, she has a future life expectancy of **31.8** years as a black female.  National Vital Statistics Report, 2009, Volume 62, Number 7- Fed. R. Evid. 902- January 6, 2014). If the jury were to award her the sum of **$5,000.00** per year for this permanency assuming the discount rate to present value equals the inflation rate, she would be entitled to a recovery, in addition to pain and suffering and his specials of **$159,000.00**

## Advice of counsel

If an insurer asserts as a defense in a bad faith action that it acted on the advice of counsel, it waives the attorney-client privilege with respect to the advice. Transamerica Title Ins. Co. v. Superior Court, 233 Cal. Rptr. 825, 829 (Cal. App.1987). The work-product protection is not absolute. Under Mass. R. Civ. P. 26(b)(3) disclosure is permitted if substantial need is shown and the equivalent cannot be obtained without undue hardship. This requires a showing "…that the item plays an exceptionally important part in the preparation of the discoverer's case for trial" *J. Smith and H. Zobel, 7 Mass. Practice, section 26.5 at 210(1975)* see also *Moore's Federal Practice, 3d, section 26.70(5)*(party must show facts in the requested documents are essential elements of the party's prima facie case) The timing also should make **no** difference as to whether particular materials or information constitutes work product either, since the work product protection applies to concluded matters as well as claims in progress. Dunlop Corp. v. Moulinage et Retorderie de Chavanoz, 487 F. 2d 480, 483 (4th Cir. 1983).

Tower Group Companies/Tower Insurance Company cannot simply respond that it has insufficient information to evaluate the claim and therefore must deny it.  Tower Group Companies/Tower Insurance Company has a duty "*to investigate the facts and consider the legal precedents.*" Heller, 376 Mass at 627-628; See Burnham v. Mark IV Holmes, Inc., 387 Mass. 575, 583 (1982). Your response within the **30 days** (York, 369 Mass. at 163-164) must set forth the evidence available through *diligent investigation* and state the *specific reasons based on this evidence* for denying the claim or making the offer proffered. All evidence available should be disclosed inclusive of all evidence not available and the conclusions drawn from the existence of, or lack of, that evidence.

## Written Acknowledgement of Legal Liability

In reference to the above captioned case, please note the case of Bobick v United States Fidelity & Guaranty Insurance, SJC, No. 08972 (June 27, 2003):

"*We set forth the applicable law. General Laws c. 93A, § 2 (a ), states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." General Laws c. 176D, § 3, in turn, prohibits "unfair or deceptive acts or practices in the business of insurance," including, in subsection (9) (f ), the failure "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." We have stated that "the former statute incorporates the latter, and [accordingly] an insurer that has violated G.L. c. 176D, § 3(9) (f ), by failing to 'effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear,' by definition, has violated the prohibition in G.L. c. 93A, § 2, against the commission of unfair or deceptive acts or practices." Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 564 (2001). Together, the statutes require an insurer, such as USF & G, "promptly to put a fair and reasonable offer on the table when liability and damages become clear, either within the thirty-day period set forth in G.L. c. 93A, § 9(3), or as soon thereafter as liability and damages make themselves apparent." Id. at 566. The standard for examining the adequacy of an insurer's response to a demand for relief under G.L. c. 93A, § 9(3) is "whether, in the circumstances, and in light of the complainant's demands, the offer is reasonable." Clegg*

*v. Butler, 424 Mass. 413, 420 (1997), quoting Calimlim v. Foreign Car Ctr., Inc., 392 Mass. 228, 234 (1984)."...*

    *In the Hopkins case, we noted that "quantifying the damages for the injury incurred by the plaintiff as a result of [an insurer's] failure under G.L. c. 176D, § 3(9) (f ), does not turn on whether the plaintiff can show that [he] would have taken advantage of an earlier settlement opportunity. The so-called causation factor entitles a plaintiff ... to recover interest on the loss of use of money that should have been, but was not, offered.... It is this amount of money that has been wrongfully withheld from the plaintiff, and it is this sum on which the defendant must pay interest to remedy its wrongdoing." Id. See Clegg v. Butler, supra at 419, quoting Schwartz v. Rose, 418 Mass. 41, 48 (1994) ("This is precisely the type of damage we have described as appropriate[ ] ... in an action ... under [G.L.] c. 93A")."*

    Since under M.G.L. c. 176D, sec 3(9)((b) and (n) it is an unfair claims settlement practice: to fail "to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of compromise settlement." **I would again make a request for a written acknowledgement from your company whereby your company accepts the reasonably clear legal liability[4] of on this case especially in light of the Bobick case.**

    To date you have not done so especially in light of my prior letters of April 7, 2014, May 6, 2014 and June 6, 2014.

    **Liability is certainly reasonably clear.** See; Yeagle v. Aetna Casualty & Sur. Co., 42 Mass. App. Ct. 650, 679 N.E. 2d 248 review denied, 425 Mass. 1105, 682 N.E. 2d 1362 (1997) which allowed damages for a non-willful, unfair insurance claim practice by failing to effectuate a prompt, fair and equitable settlement of the claim once liability

---

[4] Clegg v. Butler, 424 Mass. 413, 421 (1997) Addressed the plausibility defense with respect to statutory Unfair Claims Practices Act actions brought against liability insurers based on *failure to settle*.) Duty to settle does not arise until "liability has become reasonably clear," G. L. c. 176D, Sec. 3 (9) (f), and that liability encompasses both fault and damages. See, e.g., Van Dyke v. St. Paul Fire & Marine Ins. Co., supra at 677 (no damages awarded because liability was not reasonably clear); Demeo v. State Farm Mut. Auto. Ins. Co., 38 Mass. App. Ct. 955, 957 (1995) (defendant's fault liability was not reasonably clear).

In this case the evidence supported the judge's finding that fault was never at issue and "[a]t no time did Utica consider the case to be anything but a so-called 100% liability case against its insured."

In the case at bar the  adjuster never admitted fault and fought same forcing the plaintiff to prove same at trial.

Middlesex Superior Court, Civil Action No. 93-0640

At no time did Utica possess any credible information that indicated that plaintiff caused or contributed to the accident in any way. At no time did Utica consider the case to be anything but a so- called 100% liability case against its insured.

was reasonably clear. As was stated in <u>Hopkins v. Liberty Mutual Insurance Company</u>, Lawyer's Weekly No. 10-114-01 (SJC 08499, July 12, 2001):

> *General Laws c. 176D, §3(9)(f), and G.L. c. 93A, §9, together require an insurer such as the defendant promptly to put a fair and reasonable offer on the table <u>**when liability and damages become clear, either within the**</u>* <u>***thirty-day period set forth in G.L. c. 93A, §9(3), or as soon thereafter as***</u> <u>***liability and damages make themselves apparent.***</u>

To not timely pay the demand on this claim, as your company has done to date, obviates the purpose of the insurance policy's equitable transfer of the risk of a loss, from one entity to another in exchange for payment as a form of risk management used to hedge against the risk of a contingent, uncertain loss.

## Objective test

In the case of <u>Brown, et al v. Dragonas, et al</u>, (Lawyers weekly No. 12-041-03) (Middlesex Superior Court, C.A. No. 96-6379-T- Judge Neel) where the 93A claim being **objective** survives even a defense verdict in the underlying tort case since the underlying tort judgment is not necessarily determinative of whether liability was necessarily clear before the fact, when the insurer was responding to plaintiff's demand. Accordingly, the court can look at the conduct of the defendant insurer separately and distinctly from the facts in the underlying case. <u>Bobick v United States Fidelity & Guaranty</u> Insurance, Mass. Appeals Court, No. 01-P-139 (January 3, 2003) is instructive. An **objective test** is used to decide when an insured's liability becomes "reasonably clear." "The fact finder determines "whether a reasonable person, with knowledge of the relevant facts and law, would have probably concluded, for good reason, that the insured was liable to the plaintiff." <u>O' Leary-Alison v. Metropolitan Property & Cas. Ins. Co.</u>, 52 Mass. App. Ct. 214, 217, (2001), quoting from <u>Demeo v State Farm Mut. Auto. Ins. Co.</u>, 38 Mass. App. Ct. at 956-957. <u>Bobick</u>, <u>Id</u> at footnote 6.

## Covenant of good faith and fair dealing

The covenant of good faith and fair dealing is implied even in the respective insurance contract of  Tower Group Companies/Tower Insurance Company which provided a liability defense and indemnification to the named insured. Massachusetts law mandates that *"every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.* <u>Larson v. Larson</u>, 37 Mass. App. Ct. 106, 109, 636 N.E.2d 1365, 1367 (1994).  This is called the covenant of good faith and fair dealing. <u>Hawthorne's, Inc. v. Warrenton Realty, Inc.</u>, 414 Mass. 200, 211, 606 N.E.2d 908, 914 (1993). Moreover, conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice in violation of M.G.L. c. 93(A). <u>Anthony's Pier Four Inc. v. HBC Associates et al</u>, 411 Mass. 451, 583 N.E. 2d 806, 820 (1991).

Ms. Freeman's claim can be asserted as a third-party beneficiary. <u>Flattery v. Gregory</u>, 397 Mass. 143, 150-151, 489 N.E.2d 1257 (1986); <u>Rae v. Air-Speed, Inc.</u>, 386

Mass. 187, 196, 435 N.E. 2d 628 (1982); *Restatement (Second) of Contracts,* section 309 (1981)

Clegg v. Butler, 424 Mass. 413, 420 n.5 (1997) The duty of fair dealing in insurance settlement negotiations is established by statute under G. L. c. 176D, Sec. 3 (9), and the specific duty contained in subsection (f) is not limited to those situations where the plaintiff enjoys contractual privity with the insurer (n.5). The statutes at issue were enacted to encourage the settlement of insurance claims, see Thaler v. American Ins. Co., 34 Mass. App. Ct. 639, 643 (1993), and discourage insurers from forcing claimants into unnecessary litigation to obtain relief. This goal of facilitating settlement is equally desirable whether the plaintiff is an insured or a third-party claimant, and c. 93A, Sec. 9 (1), confers standing where there is injury resulting from another's unlawful acts. Standing does not depend on a party's status as an insured or a third-party claimant.

**n.5** [5]Perhaps attempting to buttress its argument that third-party claimants are not protected under c. 176D, Sec. 3 (9), Utica notes that subsection (g) creates no rights in persons other than the insured, see ***Jacobs v. Town Clerk of Arlington***, 402 Mass. 824, 829 (1988), and observes that other clauses can be read the same way. We note, however, that subsection (g), by its text, is explicitly restricted to insureds. There is no such limiting language contained in subsection (f), a clause which we read to apply to any party whose legal interests might be adversely affected by an insurer's failure to effectuate settlement where liability is reasonably clear. See M.C. Gilleran, The Law of Chapter 93A Sec. 9:28 (1989 & Supp. 1996).

## M.G.L. c. 93A/176D

In the case at bar the *M.G.L. c. 93A[5]/176D* claim is to be determined by a judge who can at his option use a jury on an advisory basis.

---

[5] Tower Group Companies/Tower Insurance Company is clearly a *"person"* as defined under M.G.L. c. 176 D, section 1 *et seq.*:

*Section 1. When used in this chapter, the following words shall have the following meanings except as otherwise specifically provided:*

*(a) ""Person", any individual, corporation, association, partnership, reciprocal exchange, inter-insurer, Lloyds insurer, fraternal benefit society, operators of any medical service plan and hospital service plan as defined in chapters one hundred and seventy-six B, one hundred and seventy-six C, one hundred and seventy-six E, and one hundred and seventy-six F, insurers and sponsors of a legal services plan as defined in chapter one hundred and seventy-six H, any other legal entity or self insurer which is engaged in the business of insurance, including agents, brokers, and adjusters, the Massachusetts Insurers Insolvency Fund and any joint underwriting association established pursuant to law. For purposes of this chapter, operators of any medical and hospital service plans shall be deemed to be engaged in the business of insurance.*

"a business person and an individual who participates in commercial transactions on a private, nonprofessional basis," id. at 373 N.E.2d at 976, the court has concluded that "where the Legislature employed the terms 'persons engaged in the conduct of any trade or commerce,' it intended to refer specifically to individuals acting in a business context," id. at 373 N.E.2d at 976. *Young v. Joyce*, 351 A.2d

The 93A claim is <u>not</u> limited by solely that enumerated by *Chapter 176D: Section 3. Unfair methods of competition and unfair or deceptive acts or practices; Section 3.* The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:… or (9) Unfair claim settlement practices: An unfair claim settlement practice shall consist of any of the following acts or omissions… breach of the <u>common law duty</u> -measured by a negligence standard test is whether no reasonable insurer would have filed to settle the case within the policy limits; objectively the defendant offered much less that a case is worth in a situation where liability is either clear or highly likely; An objective test is used to decide when an insured's liability becomes "*reasonably clear.*" "The fact finder determines "*whether a reasonable person, with knowledge of the relevant facts and law, would have probably concluded, for good reason, that the insured was liable to the plaintiff.* Hartford Casualty Ins Co. v New Hampshire Ins Co._ 417 Mass 115 (1995) see page 121: Subjective bad faith See:  Parker v D'Avolio, 40 Mass App Ct 394.

*Chapter 176D: Section 2. Unfair trade practices Section 2.* No person shall engage in this commonwealth in any trade practice which is defined in this chapter as, or determined pursuant to section six of this chapter to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance.

<u>LINDA HOPKINS vs. LIBERTY MUTUAL INSURANCE COMPANY</u>, SJC-08499 July 12, 2001 states: *The key provision of G. L. c. 93A, found in § 2 (a) of the statute, states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." General Laws c. 176D, § 3, prohibits "unfair or deceptive acts or practices in the business of insurance," and § 3 (9) enumerates acts and omissions that constitute unfair claim settlement practices. The former statute incorporates the latter, and an insurer that has violated G. L. c. 176D, § 3 (9) (f), by failing "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear," by definition, has violated the prohibition in G. L. c. 93A, § 2, against the commission of unfair or deceptive acts or practices. See Dodd v. Commercial Union Ins. Co., 373 Mass. 72, 77-79 (1977); Noyes v. Quincy Mut. Fire Ins. Co., 7 Mass. App Ct. 723, 726-727 (1979). See also Lazaris v. Metropolitan Prop. & Cas. Ins. Co., 428 Mass. 502, 502 (1998). A private consumer (and other legal entities that do not qualify as business plaintiffs under § 11), who has been "injured by another person's use or employment of any method, act or practice declared to be unlawful by section two . . . or . . . whose rights are affected by another person violating the provisions of [G. L. c. 176D, § 3 (9),]" may recover damages under G. L. c. 93A, § 9, for injuries arising out of the unlawful conduct. Such has been the application of G. L. c. 93A, §§ 2 and 9, and G. L. c. 176D, § 3 (9), in*

---

857 (Del.1975).

Trade or commerce are defined by M.G.L. c. 93A section 1(b).The defendant insurer is a person who was engaged in trade or commerce as those terms are used in G.L. c. 93A, and committed "an unfair or deceptive act or practice." *Lantner v. Carson*, 374 Mass. 606, 373 N.E.2d 973 (1978).

*numerous appellate decisions. See Kapp v. Arbella Mut. Ins. Co., 426 Mass. 683 (1998); Clegg v. Butler, 424 Mass. 413 (1997); Bonofiglio v. Commercial Union Ins. Co., 411 Mass. 31 (1991), S.C., 412 Mass. 612 (1992); Bertassi v. Allstate Ins. Co., 402 Mass. 366 (1988); Yeagle v. Aetna Cas. & Sur. Co., 42 Mass. App. Ct. 650 (1997); Cohen v. Liberty Mut. Ins. Co., 41 Mass. App. Ct. 748 (1996); Wallace v. American Mfrs. Mut. Ins. Co., 22 Mass. App. Ct. 938 (1986); Equitable Life Assur. Soc'y v. Porter-Englehart, 867 F.2d 79 (1st Cir. 1989). See also Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 754 (1993) ("[a] consumer asserting a claim under G. L. c. 93A, § 9, may recover for violations of G. L. c. 176D, § 3 [9], without regard to whether the violation was unlawful under G. L. c. 93A, § 2, because of the explicit statement to that effect in § 9"); M.C. Gilleran, The Law of Chapter 93A § 9:28, at 296 (1989 & Supp. 1999) ("A violation of [G. L.] c. 176D . . . is also expressly a violation of [G. L. c. 93A,] § 9").(12)*

As a result Ms. Freeman will have to incur legal costs to prove the issue of fault[6]/damages as to the defendant at trial which candidly and in good faith should not have been required, but for the insurer's conduct.[7]

This is despite prior requests to do so as requested in the prior referenced correspondence.

## Deceptive conduct

The defendant's conduct may be considered "*deceptive*" if it could reasonably be found to have caused the plaintiff to act differently from the way they would have otherwise acted. *Tagliente v. Himmer.* 949 F.2d 1 (1st Cir. 1991); *Kazmaier v. Wooten,*

---

[6] Please note the case of Bobick v United States Fidelity & Guaranty Insurance, SJC, No. 08972 (June 27, 2003) See; Yeagle v. Aetna Casualty & Sur. Co., 42 Mass. App. Ct. 650, 679 N.E. 2d 248 review denied, 425 Mass. 1105, 682 N.E. 2d 1362 (1997) ;Hopkins v. Liberty Mutual Insurance Company, Lawyer's Weekly No. 10-114-01 (SJC 08499, July 12, 2001)

[7] Clegg v. Butler, 424 Mass. 413, 421 (1997) Addressed the plausibility defense with respect to statutory Unfair Claims Practices Act actions brought against liability insurers based on *failure to settle*.) Duty to settle does not arise until "liability has become reasonably clear," G. L. c. 176D, Sec. 3 (9) (f), and that liability encompasses both fault and damages. See, e.g., **Van Dyke v. St. Paul Fire & Marine Ins. Co.,** supra at 677 (no damages awarded because liability was not reasonably clear); **Demeo v. State Farm Mut. Auto. Ins. Co.,** 38 Mass. App. Ct. 955, 957 (1995) (defendant's fault liability was not reasonably clear).

In this case the evidence supported the judge's finding that fault was never at issue and "[a]t no time did Utica consider the case to be anything but a so-called 100% liability case against its insured."

In the case at bar the  adjuster never admitted fault and fought same forcing the plaintiff to prove same at trial.

Middlesex Superior Court, Civil Action No. 93-0640

At no time did Utica possess any credible information that indicated that plaintiff caused or contributed to the accident in any way. At no time did Utica consider the case to be anything but a so- called 100% liability case against its insured.

761 F.2d 46 (1st. Cir. 1985); <u>Hogan v. Riemer</u>, 35 Mass. App. Ct. 360, 619 N.E.2d. 984 (1993). Representations or conduct can be unfair and deceptive and in violation of M.G.L. c. 93A if they are shown to induce a course of conduct on the person to whom the representation is made and an act or omission resulting from the representation and detriment to such a person as a consequence of said act or omission. See <u>Greenstein v. Flatley</u>, 19 Mass. App. Ct. 351, 474 N.E. 2d 1130, 1131 *(1985).* It did.

**<u>Claimant does not have to prove that he would have accepted a reasonable offer if the insurer had made one</u>**

Ms. Freeman does <u>not</u> have to prove that he would have accepted a reasonable offer if the insurer had made one. See <u>Hopkins v. Liberty Mutual Insurance Co.</u>, 434 Mass 556, 750 N.E. 2d 943 (2001). The court reasoned that *"(a)n insurer's statutory duty to make a prompt and fair settlement offer does not depend on the willingness of a claimant to accept such an offer."* Id at 567, 750 N.E. 2d at 951. As a result the plaintiff does not have to show that he would have taken advantage of an earlier settlement opportunity. Id at 567, 750 N.E. 2d at 951-952. An insurer is not subject to 93A liability if the offer was reasonable in the circumstances. <u>Forcucci v. U.S.F. & G. Co.</u>, 11 F.3d 1 (1st. Cir. 1993). The reasonableness of the offer must be determined in light of the terms of the demand and all attendant facts and circumstances. <u>Patry v Harmony Homes, Inc.</u>, 10 Mass App. Ct. 1, 404 N.E. 2d 1265, 1268 (1980)

This does <u>not</u> excuse Tower Group Companies/Tower Insurance Company from an obligation to make a reasonable offer, <u>Hopkins v. Liberty Mutual Ins.</u>, 434 Mass. 536 (2001) as cited by <u>Bobick v. U.S.F & G. Co.</u>, 439 Mass, 652 (2003). The underlying duty to effectuate a prompt, fair and equitable settlement remains unaltered. <u>Bobick v. U.S.F & G. Co.</u>, 439 Mass. 652, 661, 790 N.E. 653, 662 (2003).

This office's recommended demand for settlement, *without prejudice,* is **$350,000**, based on the current known medical conditions and the stated insurance policy limits[8]. This is open for **30 days** from this letter and then withdrawn. *Please note that this affords Tower Group Companies/Tower Insurance Company the opportunity to settle this case within the insurance policy limits and <u>not</u> expose your insured to extra-contractual liability.*

### <u>DEMAND</u>

Please note that the insurer has an obligation to its insured to settle valid claims <u>Murach v. Mass. Bonding Insurance Co.</u>, 339 Mass. 184, 158 NE 2d 338 (1954).The

---

[8] Please also notify any excess or umbrella carrier of this matter. <u>Hartford Casualty Ins. Co. v. New Hampshire Ins. Co.</u>, 417 Mass. 115, 628 N.E. 2d 14 (1994). Please consider this letter and the prior notices received by your company on this matter as timely notice to avert any claims of prejudice on the insurer's part, including any excess insurer. <u>Darcy v. Hartford,</u> 407 Mass. 481, 554 N.E. 2d 28 (1990); M.G.L. c. 175 section 112. <u>Pursuant to M.G.L. c. 175 §112C, a demand is made for any excess insurance policy above the stated primary limits.</u>

burden is on Tower Group Companies/Tower Insurance Company to show the reasonableness of any settlement offer made in response to Ms. Freeman's demand. Patry v Harmony Homes, Inc., 10 Mass. App. 1, 404 N.E. 2d. 1205 (1980). A settlement offer made, which is determined later to be unreasonable, will still subject your company to multiple damages. Id. at 1268. See, Yeagle v. Aetna Casualty & Sur. Co., 42 Mass. App. Ct. 650, 679 N.E. 2d 248 review denied, 425 Mass. 1105, 682 N.E. 2d 1362 (1997) which allowed damages for a non-willful, unfair insurance claim practice by failing to effectuate a prompt, fair and equitable settlement of the claim once liability was reasonably clear.

## Unfair and Deceptive Act or Practice

For Tower Group Companies/Tower Insurance Company to require that not afforded **or** to fail to provide that as required in the statutes, by operation of law, M.G.L. c. 176D, section 3, and the insurance contract would be a blatant violation of the "*good faith*" requirements of contract[9] and an unfair and deceptive trade practice or act under M.G.L. c. 93A/176D.

One of the primary purposes of the demand letter as a prerequisite to a Chapter 93A suit is to encourage negotiation and settlement. Thorpe v. Mutual of Omaha Ins. Co., 984 F. 2d 541 (1st Cir. 1993). It affords your company an opportunity to review the facts and the law involved to determine whether the requested relief should be granted or denied and to enable the defendant to make a reasonable tender of settlement in order to limit recoverable damages. Frederick v. Rosenblatt, 40 Mass. App. Ct. 713 (1996).

Please be aware that "[t]he promotion of reasonable settlement offers is the prime goal of c. 93A, §§9 and 11." International Fidelity Ins. Co. v. Wilson, 387 Mass. 841, 443 N.E. 2d 1308 (1983). "Indeed, the conduct proscribed by statute is as much the failure to make a reasonable settlement offer as it is the substantive violation of c. 93A. Multiple damages are 'the appropriate punishment' for forcing plaintiffs to litigate clearly valid claiMr." International Fidelity Ins. Co. v. Wilson, supra. "*The standard is objective and requires the defendant to investigate the facts and consider the legal precedents.*" Heller v. Silverbranch, 376 Mass. 621, 328 N.E. 2d 1065, 1070 (1978).

## Legal Liability/ Damages

Tower Group Companies/Tower Insurance Company has not set forth why the legal liability inclusive of damages of the underlying tortfeasor, is not reasonably clear under the terms of the policy. (Looked at *objectively*; Brown, et al v. Dragonas, et al,

---

[9] Massachusetts law mandates that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. Larson v. Larson, 37 Mass. App. Ct. 106, 109, 636 N.E.2d 1365, 1367 (1994). This is called the covenant of good faith and fair dealing. Hawthorne's, Inc. v. Warrenton Realty, Inc., 414 Mass. 200, 211, 606 N.E.2d 908, 914 (1993).

(Lawyers weekly No. 12-041-03) (Middlesex Superior Court, C.A. No. 96-6379-T- Judge Neel). The legal liability inclusive of damages is clear.

## VIOLATIONS

Accordingly issues of <u>coverage</u>, <u>legal liability</u>, and <u>damages</u> cannot serve as a valid *objective* legal basis for the denial of the payment of the Ms. Freeman's written demand for relief.

Tower Group Companies/Tower Insurance Company is clearly a *"person"* as defined under M.G.L. c. 176 D, section 1 <u>et seq</u>.

In addition to the above, the conduct of Tower Group Companies/Tower Insurance Company in regard to Ms. Freeman is violative of M.G.L. c. 176D, §3(9) including, but not limited to the following:

### Chapter 176D: Section 2 Unfair trade practices

*Section 2. No person shall engage in this commonwealth in any trade practice which is defined in this chapter as, or determined pursuant to section six of this chapter to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance.*

*(9) Unfair claim settlement practices: An unfair claim settlement practice shall consist of any of the following acts or omissions:*

*(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;*

*(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;*

*(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;*

*(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;*

*(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;*

*(f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;*

*(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;*

*(h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;*

*(i) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured;*

*(j) Making claims payments to insured or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made;*

*(k) Making known to insured or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements of compromises less than the amount awarded in arbitration;*

*(l) Delaying the investigation or payment of claims by requiring that an insured or claimant, or the physician of either, submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;*

*(m) Failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; or*

*(n) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.*

*(10) Failure to maintain complaint handling procedures; failure of any person to maintain a complete record of all of the complaints which it has received since the date of its last examination, which record shall indicate in such form and detail as the commissioner may from time to time prescribe, the total number of complaints, their classification by line of insurance, and the nature, disposition, and time of processing of each complaint. For purposes of this subsection, ""complaint" shall mean any written communication primarily expressing a grievance. Agents, brokers and adjusters shall maintain any written communications received by them which express a grievance for a period of two years from receipt, with a record of their disposition, which shall be available for examination by the commissioner at any time.*

*(11) Misrepresentation in insurance applications: making false or fraudulent statements or representations on or relative to an application for an insurance policy, for the purpose of obtaining a fee, commission, money, or other benefit from any insurers, agent, broker, or individual.*

*(12) Any violation of sections ninety-five, two B, one hundred eighty-one, one hundred eighty-two, one hundred eighty-three, one hundred eighty-seven B, one hundred eighty-seven C, one hundred eighty-seven D, one hundred eighty-nine, one hundred ninety-three E, or one hundred ninety-three K of chapter one hundred seventy-five.*

Please note that the insurer has an obligation to its insured to settle valid claims. Murach v. Mass. Bonding Insurance Co., 339 Mass. 184, 158 NE 2d 338 (1954).

In addition, such conduct, activities in the business practices of Tower Group Companies/Tower Insurance Company are deceptive, unfair and violative of M.G.L. c. §93A, §§2, 9.  These acts subject Tower Group Companies/Tower Insurance Company to the exposure for double and treble damages, attorneys' fees and related costs.  Yeagle v. Aetna Casualty & Surety Company (No. 95-P-2164.)

Absolutely **no** basis in law or fact exists for the Tower Group Companies/Tower Insurance Company's failure to pay the claimant's recommended written demand for settlement.

Tower Group Companies/Tower Insurance Company is required to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of compromise settlement. Tower Group Companies/Tower Insurance Company has <u>never</u> done so in connection with this claim.

As was stated in Hopkins v. Liberty Mutual Insurance Company, Lawyer's Weekly No. 10-114-01 (SJC 08499, July 12, 2001):

*General Laws c. 176D, §3(9)(f), and G.L. c. 93A, §9, together require an insurer such as the defendant promptly to put a fair and reasonable offer on the table **when liability and damages become clear, either within the thirty-day period set forth in G.L. c. 93A, §9(3), or as soon thereafter as liability and damages make themselves apparent***

In fact the Court in *James A. Clegg v Jeff L. Butler, et al, Lawyers Weekly No. 10-064-97 (March 12, 1997) states:*

*"Moreover, when an insurer wrongfully withholds funds from a claimant, it is depriving that claimant of the use of those funds." "This is precisely the type of damage we have described as appropriately being subject to multiplication in an action ... under c. 93A" citing Schwartz v Rose, 418 Mass. 41, 48 (1994)*

The Supreme Court in *James A. Clegg v Jeff L. Butler,* (S.J.C. March 12, 1997) stated:

*The duty of fair dealing in insurance settlement negotiations is established by statute under G.L. c. 176D, §3(9), and the specific duty contained in subsection (f) is not limited to those situations where the plaintiff enjoys contractual privy with the insurer.[5]  The statutes at issue were enacted to encourage the settlement of insurance claims, see Thaler v American Ins. Co., 34 Mass. App. Ct. 639, 643 (1993), and discourage insurers from forcing claimants into unnecessary litigation to obtain relief.  This goal of facilitating settlement is equally desirable whether the plaintiff is an insured or a third-party claimant, and c. 93A, §9(1), confers standing where there is injury resulting from another*

*unlawful acts. Standing does not depend on a party's status as an insured or a third-party claimant.*

See, Yeagle v. Aetna Casualty & Sur. Co., 42 Mass. App. Ct. 650, 679 N.E. 2d 248 review denied, 425 Mass. 1105, 682 N.E. 2d 1362 (1997) which allowed damages for a non-willful, unfair insurance claim practice by failing to effectuate a prompt, fair and equitable settlement of the claim once liability was reasonably clear.

The aforementioned actions by Tower Group Companies/Tower Insurance Company have caused Ms. Freeman to further suffer, including but not limited to, the following injuries:

1)   Forced the claimant to commence and defend litigation, incurring the accompanying costs, expenses, counsel fees and delays;

2)   Deprived the claimant of monies and its uses to fairly and justly compensate for the injuries sustained;

3)   Caused the claimant's mental and physical distress at the unnecessary delay in the resolution of the claims;

4)   Exposed the claimants to additional financial burdens;

5)   Forced the claimant to alter her lifestyles to adjust to the above-referenced injuries;

6)   Other injuries to be shown at trial.

Please note that the burden is on your company to show the reasonableness of any settlement offer made in response to Ms. Freeman's demand. Patry v Harmony Homes, Inc., 10 Mass. App. 1, 404 N.E. 2d. 1205 (1980). A settlement offer made, which is determined later to be unreasonable, will still subject your company to multiple damages. Id. at 1268.

In addition to damages for depriving Ms. Freeman of the use of these funds, Swartz v Rose, 418 Mass. 41, 48 (1994); Bertassi v Allstate Ins. Co., 402 Mass. 366, 522 NE 2d 949 (1988) failure to make the payment will force this office on behalf of the claimant to commence the litigation and receive a full measure of damages under this provision.

This would be inclusive of Ms. Freeman's attorney's fees[10]. As was stated by the Appeals Court in Siegel v. Berkshire Life Insurance Company, (04-P-651 Appeals Court) (October 6, 2005):

---

[10] "The amount of reasonable attorney's fees under c.93A is within the broad discretion of the trial judge."; Linthicum v. Archambault, 398 N.E.2d 482, 488 (Mass. 1979), overruled in part on other grounds by Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 640 N.E.2d 1101, 1105 (Mass. 1994). It is clear from the statute that the attorney's fee is to be awarded based upon the services rendered "in said action" and not

limited either by the amount in controversy or even the theories of liability subject to pretrial discovery and subsequent trial.  In Hanner v. Classic Auto body, Inc.,  406 N.E. 2d 686, 10 Mass. App. 121 (1980) it was held that the goal of the award of attorney's fees is to allow just and fair compensation for the services and efforts of counsel on the case viewed as a whole.

Attorney's fees may be awarded pursuant to G.L. c. 93A even if the Court does not award damages under the Act. Refuse and Environmental Systems, Inc. v. Industrial Services of America, Inc., 932 F. 2d 37 (1st Cir. 1991).  Hence proof of the M.G.L. c. 93A, Sec. 2 violation, irrespective of the amount in controversy, statutorily entitles plaintiff to full fees and costs and the courts have so held. Nasco, Inc. v. Public Storage, Inc., No. 97-1340, 1st Cir., October 7, 1997. It is evident from Massachusetts case law that the requirement of proving actual "loss of money or property" as required by M.G.L. c.93A, §11, has been modified and lessened to include any "adverse effect upon plaintiff even if it is not quantifiable in dollars." Jet Line Serv. Inc. 537 N.E.2d at 115.  Massachusetts holds that an actual award of damages is not necessary to support a fee award but only that plaintiff must have been adversely affected by the defendant's conduct. Shaprio v. Public Service Mutual Insurance Co., 19 Mass. App. Ct. 648, 477 N.E.2d 146 (1985)(cited in Jet Line Serv. Inc., 537 N.E.2d 107 (1989).  This is so even in the absence of actual evidence of loss. Id.  So long as it is "reasonable to assume "that the plaintiff incurred such a loss then an award of attorney's fees is warranted. Id.

These are precisely the types of losses that have been found to be sufficient to support an award of attorney's fees. See, Petition of Lund, 617 N.E.2d 1013 (Mass. App. Ct. 1993)(costs of responding to customer complaints and lawsuits about defective siding); Shapiro v. Public Service Mutual Insurance Co., 19 Mass. App. Ct. 648, 477 N.E.2d 146 (1985)(costs due to loss of use of money even in the absence of evidence); Jet Line Serv. Inc. v. American Employers Ins. Co., 537 N.E.2d 107 (1989)(presumption that plaintiff "surely sustained loss" as a result of defendants conduct).

This was most recently reiterated by the court in Siegel v. Berkshire Life Ins., 04-P-651, Mass. App. (October 6, 2005) If a c. 93A violation forces someone to incur legal fees and expenses that are not simply those incurred in vindicating that person's rights under the statute, those fees may be treated as actual damages in the same way as other losses of money or property. See; Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. 60, 63 (1999); Tech Plus, Inc. v. Ansel, 59 Mass. App. Ct. 12, 21 (2003). Hanover Ins. Co. v. Golden, 436 Mass. 584, 595 n.6 (2002)    The court further indicated regardless of the arrangements the plaintiff had with her attorney, as the prevailing party in a c. 93A case, the plaintiff was entitled to recover a reasonable attorney's fee for the work done to vindicate her rights under the statute. See Graves v. R.M. Packer Co., 45 Mass. App. Ct. 760, 771 (1998). The award of fees under the statute belongs to the prevailing party, not the attorney, while the extent of the party's obligation to pay his or her attorney is defined by the agreement between them. Ibid., citing Smith v. Consalvo, 37 Mass. App. Ct. 192, 195 (1994). See generally Cambridge Trust Co. v. Hanify & King Professional Corp., 430 Mass. 472, 478-481 (1999). "The amount of a reasonable attorney's fee, awarded on the basis of statutory authority . . . is largely discretionary with the judge, who is in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney's services." Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993). However, the exercise of the judge's discretion must be guided by proper legal principles. The court set fort the current standards for an award of statutory legal fees against an adverse party. The Supreme Judicial Court has indicated that the "basic measure" of a reasonable statutory attorney's fee award is the lodestar method, which involves "multiplying the number of hours reasonably spent on the case [by] a reasonable hourly rate." Fontaine v. Ebtec Corp., 415 Mass. at 324. The lodestar method should govern in such cases "unless there are special reasons to depart from [it]." Id. at 325. The court further indicated in Fontaine, a contingent fee case, that, "[i]n limited circumstances, [such] awards may be enhanced to compensate for the risk of nonpayment." Id. at 324.

If a c. 93A violation forces someone to incur legal fees and expenses that are not simply those incurred in vindicating that person's rights under the statute, those fees may be treated as actual damages in the same way as other losses of money or property. See Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. 60, 63 (1999); Tech Plus, Inc. v. Ansel, 59 Mass. App. Ct. 12, 21 (2003).

Siegel v Berkshire Life Insurance Co, *06-P-1659, Lawyers Weekly No. 11-238-07*, affords trebling of the legal fee in a 93A/176D action and affords awarding pre-judgment interest on the attorney's fee.

Once a judgment is obtained consistent with the amendment to M.G.L. c. 93A, §9(3), inserted by St. 1989 c. 580, §1 which states:

> *... the amount of actual damage to be multiplied by the Court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence..."*

the judgment will be the damage aspect subject to multiplication and not merely the interest for loss of use of the funds, *Clegg v Butler, supra; Bonfiglio v Commercial Union Ins. Co., 411 Mass. 31 (1991) S.C. 412, Mass. 612 (1992)*. The trebled judgment figure will be the recovery sought from Tower Group Companies/Tower Insurance Company.

As you are aware, under M.G.L. c. 93A, §9(3) **thirty days** are afforded to you to make a written tender of the above demand in order to avoid multiple damages under M.G.L. c. 93A. Failure to do so will establish that the relief is **not** reasonable in relation to the injury actually suffered by the claimant. It also, in light of the contents of this letter and this office's past correspondence, will clearly establish a willful and knowing violation of M.G.L. c. 93A, §2, and establish that the refusal to grant relief upon the demand was made in bad faith. This will subject Tower Group Companies/Tower Insurance Company to double or treble damages. This is especially true in light of the recent case of Brown, et al v. Dragonas, et al, (Lawyers weekly No. 12-041-03) (Middlesex Superior Court, C.A. No. 96-6379-T- Judge Neel) where the 93A claim being objective survives even a defense verdict in the underlying tort case since the underlying tort judgment is not necessarily determinative of whether liability was necessarily clear before the fact, when the insurer was responding to plaintiff's demand.

While the liability and damages are "*apparent*", Ms. Freeman's demand of **$350,000** dollars is therefore by no means excessive. This does not excuse an insurer, such as Tower Group Companies/Tower Insurance Company, from an obligation to make a *reasonable offer*, Hopkins v. Liberty Mutual Ins., 434 Mass. 536 (2001)as cited by Bobick v. U.S.F & G. Co., 439 Mass, 652 (2003). Tower Group Companies/Tower Insurance Company is required to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of compromise settlement.

I optimistically hope that reason will ultimately prevail and that a good faith tender will be provided of **$350,000** dollars.

I would ask that you notify the insured and/or their personal legal counsel of the opportunity to settle within the policy limits and not expose it to extra-contractual liability <u>and</u> provide it with a copy of this correspondence.

I would also request that you forward a copy of this letter to the appropriate person for *complaint handling procedures* <u>as required by</u> **M.G.L. c. 176D, section 3(10)** <u>and</u> forward a copy of this correspondence to the *Insurance Commissioner, Division of Insurance, One South Station, Boston, MA 02110.*

I look forward to hearing from you within the statutory **30 days**.

Very truly yours,

George F. Leahy, Esq.

Cc:
Francis J. Deasley, Esq.
Deasley, Mahoney, Valentini & North, Ltd.
Suite 3400
1601 Market Street
Philadelphia, PA 19103-2301

*The Law Office of George F. Leahy*
*P.O. Box 15*
*West Boxford, Massachusetts 01885-0015*
Telephone: (978) 686-5600  Facsimile: (978) 686-5600

George F. Leahy*

*Also Admitted in Maine
October 22, 2014

Tower Group Companies
Tower Insurance Company
120 Broadway
31st Floor
New York, NY 10271



**Re: Alissa Freeman v. Amquip Crane Rental, LLC**
**Date of Loss: October 8, 2013 at approximately 2:00 p.m.**
**Amquip Order No.: 312318**
**Insured Employer: Greenwood Industries, P.O. Box 2800, Worcester, MA 01613**
**Locus: Boston Wharf Tower, Melcher Street, Boston, MA 02127**
**W.C. Insurer: Chartis/Granite State Ins. Co.**
**W.C. Claim No. 555-109205**
**W.C. Policy number: *requested***
**DIA No.:**
**Subject: Tort Claim**

Dear Sir or Madam:

On September 11, 2014 Alissa Freeman through this office made a written demand for relief in accordance with Massachusetts General Laws, chapter 93A, §9(3), M.G.L. c. 176 D, section 1 et seq./ M.G.L. c. 176D, §3(9) on her behalf as the claimant, Alissa Freeman (DOB 8/27/1965) of 7 Wellington Street, Boston, MA 02118  on her claim in connection with personal injuries, which she sustained on or about October 8, 2013 as to Tower Group Companies/Tower Insurance Company (Tower).

The claimant's referenced correspondence complies with the statue and reasonably describes the unfair and deceptive act or practice of your client.

A reply letter was required within 30 days. *None was received*[1]; so there was no adequate address of an offer tendered in relation to Ms. Freeman's damages. This is the burden of Tower. The purpose of the demand is to encourage negotiation and settlement, to permit the respondent to investigate the basis of the claim made, and to operate to control damages. <u>Spring v Geriatric Authority of Holyoke</u>, 394 Mass. 274, 475 N.E. 2d 727,735 (1984); <u>Slaney v Westwood Auto, Inc.</u>, 366 Mass. 688, 704 (1975); <u>Thorpe v. Mutual of Omaha Insurance Company</u>, 984 F. 2d 541, 544 (1st Cir. 1993)

As you are aware the only response to the M.G.L. c 93A demand with immediate legal significance is a *"written tender of settlement"* The reasonableness of the offer must be determined in light of the terms of the demand and all attendant facts and circumstances. <u>Patry v Harmony Homes, Inc.</u>, 10 Mass App. Ct. 1, 404 N.E. 2d 1265, 1268 (1980) It is Ms. Freeman's position that as there was no written tender of settlement in light of the established damages in a clear liability and damage case in reasonable relation to the injuries sustained by Ms. Freeman.

Therefore the lack of a tender is *neither fair nor equitable*. <u>Bobick v. U.S.F & G. Co.</u>, 439 Mass. 652, 660, 790 N.E. 653, 657 (2003).

Further that the refusal to grant relief was made in bad faith with knowledge or reason to know that the act or practice complained of violated M.G.L. c. 93A, sec. 2. Hence please take this letter as a formal rejection on the claimant's part. The cited cases point to punitive damages.

Accordingly **no** opportunity will be afforded Tower to limit any recovery under M.G.L. c. 93A, sec. 9(3) inclusive of attorney fees, costs, expert fees, as well as up to three but not less than two times the amount of the actual damages of the claimant, Ms. Freeman.

This would be inclusive of Ms. Freeman's attorney's fees[2]. As was recently stated by the Appeals Court in <u>Siegel v. Berkshire Life Insurance Company</u>, (04-P-651 Appeals Court) (October 6, 2005):

---

[1] Tower Group Companies/Tower Insurance Company could not simply respond that it has insufficient information to evaluate the claim and therefore must deny it. Tower Group Companies/Tower Insurance Company has a duty *"to investigate the facts and consider the legal precedents."* Heller, 376 Mass at 627-628; See <u>Burnham v. Mark IV Holmes, Inc.</u>, 387 Mass. 575, 583 (1982). Its required response within the **30 days** (<u>York</u>, 369 Mass. at 163-164) <u>must set forth the evidence available through *diligent investigation* and state the *specific reasons based on this evidence* for denying the claim or making the offer proffered. All evidence available should be disclosed inclusive of all evidence not available and the conclusions drawn from the existence of, or lack of, that evidence.</u>

[2] consistent with <u>Siegel v. Berkshire Life Ins.</u>, 04-P-651, Mass. App. (October 6, 2005)

*"The amount of a reasonable attorney's fee, awarded on the basis of statutory authority . . . is largely discretionary with the judge, who is in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney's services." Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993). However, the exercise of the judge's discretion must be guided by proper legal principles. ...*

*If a c. 93A violation forces someone to incur legal fees and expenses that are not simply those incurred in vindicating that person's rights under the statute, those fees may be treated as actual damages in the same way as other losses of money or property. See Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. 60, 63 (1999); Tech Plus, Inc. v. Ansel, 59 Mass. App. Ct. 12, 21 (2003).*

I still optimistically hope that reason will ultimately prevail and that a good faith tender of **$350,000** dollars will be provided in the next **10 days**. This is not to be taken as a waiver of the 30 day response requirement.

Thank you.

Very truly yours,

George F. Leahy, Esq.

Cc:
Francis J. Deasley, Esq.
Deasley, Mahoney, Valentini & North, Ltd.
Suite 3400
1601 Market Street
Philadelphia, PA 19103-2301

---

*The judge arrived at the fee award using the factors set forth in Mulhern v. Roach, 398 Mass. 18, 24 (1986), which involved a dispute between a lawyer and client over the reasonable value of the lawyer's services in representing the client in two land damage cases. That case identified the following considerations relevant to the assessment of attorney's fees: "the ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by the controversy, and the results secured." Ibid., quoting from Cummings v. National Shawmut Bank, 284 Mass. 563, 569 (1933). Compare Linthicum v. Archambault, 379 Mass. 381, 388-389 (1979).*

The Supreme Judicial Court has indicated that the "basic measure" of a reasonable statutory attorney's fee award is the lodestar method, which involves "multiplying the number of hours reasonably spent on the case [by] a reasonable hourly rate."(8) Fontaine v. Ebtec Corp., 415 Mass. at 324. The lodestar method should govern in such cases "unless there are special reasons to depart from [it]." Id. at 325. The court further indicated in Fontaine, a contingent fee case, that, "[i]n limited circumstances, [such] awards may be enhanced to compensate for the risk of nonpayment." Id. at 324.

**CIVIL ACTION COVER SHEET**

DOCKET NO.(s)
15-0489A

Trial Court of Massachusetts
Superior Court Department
County: *Suffolk*

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| *ALISSA FREEMAN* | *AMQUIP CRANE RENTAL, LLC, et al* |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE | ATTORNEY (if known) |
|---|---|
| *GEORGE F. LEAHY, ESQ., P.O. BOX 15, WEST BOXFORD, MA 01885* Board of Bar Overseers number: *BBO# 289990* | |

## Origin code and track designation

Place an x in one box only:

- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.       TYPE OF ACTION (specify)       TRACK        IS THIS A JURY CASE?

*B04*        *NEGLIGENCE*        (F)        (X) Yes        ( ) No

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses .................................................... $ ............
2. Total Doctor expenses ..................................................... $ ............
3. Total chiropractic expenses ............................................... $ ............
4. Total physical therapy expenses .......................................... $ ............
5. Total other expenses (describe) ..........................................

Subtotal $ ............

B. Documented lost wages and compensation to date ............................. $ ............
C. Documented property damages to date ....................................... $ ............
D. Reasonably anticipated future medical and hospital expenses ............... $ ............
E. Reasonably anticipated lost wages ......................................... $ ............
F. Other documented items of damages (describe) ..............................

$ ............

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

*Please see attached Mass. R. Civ. P. 29 statement*

$ ............

TOTAL $ ............

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

*N/A*

TOTAL $. ............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record *George F. Leahy, Esq.*        DATE: *2/17/2015*

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

I HEREBY ATTEST AND CERTIFY ON
April 15, 2015
, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: *Margaret M. Sellon*
Asst. Clerk

CIVIL ACTION COVER SHEET
INSTRUCTIONS

### SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

| CONTRACT | | | REAL PROPERTY | | | MISCELLANEOUS | | |
|---|---|---|---|---|---|---|---|---|
| A01 | Services, labor and materials | (F) | C01 | Land taking (eminent domain) | (F) | E02 | Appeal from administrative | (X) |
| A02 | Goods sold and delivered | (F) | C02 | Zoning Appeal, G.L. c.40A | (F) | | Agency G.L. c. 30A | |
| A03 | Commercial Paper | (F) | C03 | Dispute concerning title | (F) | E03 | Action against Commonwealth | |
| A08 | Sale or lease of real estate | (F) | C04 | Foreclosure of mortgage | (X) | | Municipality, G.L. c.258 | (A) |
| A12 | Construction Dispute | (A) | C05 | Condominium lien and charges | (X) | E05 | All Arbitration | (X) |
| A99 | Other (Specify) | (F) | C99 | Other (Specify) | (F) | E07 | c.112,s.12S (Mary Moe) | (X) |
| | | | | | | E08 | Appointment of Receiver | (X) |
| | **TORT** | | | | | E09 | General contractor bond, | |
| B03 | Motor Vehicle negligence- | | | **EQUITABLE REMEDIES** | | | G.L. c.149,s.29,29a | (A) |
| | personal injury/property damage | (F) | D01 | Specific performance of contract | (A) | E11 | Workman's Compensation | (X) |
| B04 | Other negligence-personal | | D02 | Reach and Apply | (F) | E14 | Chapter 123A Petition-SDP | (X) |
| | injury/property damage | (F) | D06 | Contribution or Indemnification | (A) | E15 | Abuse Petition, G.L.c.209A | (X) |
| B05 | Products Liability | (A) | D07 | Imposition of Trust | (A) | E16 | Auto Surcharge Appeal | (X) |
| B06 | Malpractice-medical | (A) | D08 | Minority Stockholder's Suit | (A) | E17 | Civil Rights Act, G.L.c.12,s.11H | (A) |
| B07 | Malpractice-other(Specify) | (A) | D10 | Accounting | (A) | E18 | Foreign Discovery proceeding | (X) |
| B08 | Wrongful death,G.L.c.229,s2A | (A) | D12 | Dissolution of Partnership | (F) | E96 | Prisoner Cases | (F) |
| B15 | Defamation (Libel-Slander) | (A) | D13 | Declaratory Judgment G.L.c.231A | (A) | E97 | Prisoner Habeas Corpus | (F) |
| B19 | Asbestos | (A) | D99 | Other (Specify) | (F) | E99 | Other (Specify) | (X) |
| B20 | Personal Injury-Slip&Fall | (A) | | | | | | |
| B21 | Environmental | (A) | | | | | | |
| B22 | Employment Discrimination | (F) | | | | | | |
| B99 | Other (Specify) | (F) | | | | | | |

### TRANSFER YOUR SELECTION TO THE FACE SHEET.

EXAMPLE:

| CODE NO. | TYPE OF ACTION (SPECIFY) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | (F) | ☒ Yes   ☐ No |

### SUPERIOR COURT RULE 29

**DUTY OF THE PLAINTIFF.** The plaintiff or his/her counsel shall set forth, on the face sheet (or attach additional sheets as necessary), a statement specifying in full and itemized detail the facts upon which the plaintiff then relies as constituting money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served on the defendant together with the complaint. If a statement of money damages, where appropriate is not filed, the Clerk-Magistrate shall transfer the action as provided in Rule 29(5)(C).

**DUTY OF THE DEFENDANT.** Should the defendant believe the statement of damages filed by the plaintiff in any respect inadequate, he or his counsel may file with the answer a statement specifying in reasonable detail the potential damages which may result should the plaintiff prevail. Such statement, if any, shall be served with the answer.

### A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT,  BUFF COLOR PAPER.

### FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
### MAY RESULT IN DISMISSAL OF THIS ACTION.

3

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                              SUPERIOR COURT DEPARTMENT
                                          CIVIL ACTION NO.: 2015-0489

* * * * * * * * * * * * * * * * * * * * * * * *

ALISSA FREEMAN,
        Plaintiff

vs.

AMQUIP CRANE RENTAL, LLC, and
TOWER GROUP COMPANIES/TOWER INSURANCE COMPANY /(NBIS
Construction & Transport Insurance Services, Inc. (third-party claims administrator)
        Defendants

* * * * * * * * * * * * * * * * * * * * * * * *

### AFFIDAVIT OF COMPLIANCE OF GEORGE F. LEAHY, ATTORNEY FOR THE PLAINTIFF, UNDER MASS. R. CIV. P. 4(F)

I, George F. Leahy, attorney for the plaintiff, Alissa Freeman, pursuant to M.G.L. c. 223A, section 6(b) and Mass. R. Civ. P. 4(e)(3) hereby attest and swear that service of process was made upon:

The defendant, TOWER GROUP COMPANIES/TOWER INSURANCE COMPANY /(NBIS Construction & Transport Insurance Services, Inc. (third-party claims administrator):

> a. By mailing a copy of the summons, plaintiff's complaint, civil action cover sheet, Rule 29 Statement, interrogatories, requests for admission, and requests for production of documents on **March 4, 2015**, postage prepaid- priority mail, certified mail, return receipt requested, to:

**Certified Mail Return Receipt Requested**
**Article Number: 7003-0500-0000-1622-0400**
Tower Group Companies
Tower Insurance Company
120 Broadway
31st Floor
New York, NY 10271

> which was received by the defendant on **March 23, 2015 (Exhibit A** *attached hereto*)

1

Dated: March 24, 2015

The plaintiff, Alissa Freeman,
by her attorney,

George F. Leahy, Esq.
BBO#: 289990
The Law Office of George F. Leahy
P.O. Box 15
West Boxford, MA 01885-0015
Phone: (978) 686-5600

I HEREBY ATTEST AND CERTIFY ON

April 15, 2015____, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

Asst. Clerk

2

```
==========================================
              NORTH ANDOVER
              131 MAIN ST
              NORTH ANDOVER
                   MA
                018459998
03/04/2015    (800)275-8777    9:00 AM
==========================================
==========================================
Product                  Sale      Final
Description              Qty       Price
------------------------------------------
PM 1-Day                   1        $5.75
Flat Rate Env
    (Domestic)
    (BOSTON, MA  02114)
    (Flat Rate)
    (Expected Delivery Day)
    (Thursday 03/05/2015)
    (USPS Tracking #)
    (9114 9999 4431 4013 1046 08)
Insurance                  1        $0.00
    (Amount:$50.00)
PM                         1        $5.75
Flat Rate Env
    (Domestic)
    (NEW YORK, NY  10271)
    (Flat Rate)
    (Expected Delivery Day)
    (Friday 03/06/2015)
Certified                  1        $3.30
    (@@USPS Certified Mail #:70030500
000016220400)
Return                     1        $2.70
Receipt
------------------------------------------
Total                              $17.50
------------------------------------------
Credit Card Remitd                 $17.50
    (Card Name:VISA)
    (Account #:XXXXXXXXXXX4764)
    (Approval #:01305C)
    (Transaction #:187)

For tracking or inquiries go to
USPS.com or call 1-800-222-1811.

Save this receipt as evidence of
insurance. For information on filing
an insurance claim go to
usps.com/ship/file-domestic-claims.htm

Order stamps at usps.com/shop or call
1-800-Stamp24. Go to
usps.com/clicknship to print shipping
labels with postage. For other
information call 1-800-ASK-USPS.

*********************************
Get your mail when and where you want
```

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®

NEW YORK, NY 10271
Long Aug 80¢ - Tower Freeman

| | | |
|---|---|---|
| Postage | $ $5.75 | 0845 |
| Certified Fee | $3.30 | 08 |
| Return Receipt Fee (Endorsement Required) | $2.70 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $11.75 | |

Sent To
Tower Ins Company                 03/04/2015
Street, Apt. No.
or PO Box No.
City, State, ZIP+4

PS Form 3800, June 2002          See Reverse for Instructions

7003 0500 0000 1622 0400

*The Law Office of George F. Leahy*
*P.O. Box 15*
*West Boxford, Massachusetts 01885-0015*
Telephone: (978) 686-5600  Facsimile: (978) 686-5600

March 4, 2015

**Certified Mail Return Receipt Requested**
**Article Number: 7003-0500-0000-1622-0400**
Tower Group Companies
Tower Insurance Company
120 Broadway
31st Floor
New York, NY 10271

**Re: Alissa Freeman v. Amquip Crane Rental, LLC and Tower Group Companies/**
**Tower Insurance Company, et al.**
**Suffolk Superior Court, C.A. No.: 2015-0489**

**Date of Loss:**    October 8, 2013 at approximately 2:00 p.m.
**Amquip Order No.: 312318**
**Insured Employer: Greenwood Industries, P.O. Box 2800, Worcester, MA 01613**
**Locus: Boston Wharf Tower, Melcher Street, Boston, MA 02127**
**W.C. Insurer: Chartis/Granite State Ins. Co.**
**W.C. Claim No. 555-109205**
**NBIS Claim No.: 02-01-0003164**
**Subject: Tort Claim**

Dear Sir or Madam:

    In connection with the above-referenced matter, enclosed herewith for service of process under the **Massachusetts Long Arm Statute, M.G. L. c. 223A, sec. 1 et seq.**, please find the following:

1.    One Summons;

2.    Civil Action Cover Sheet;

3.    Plaintiff's Complaint;

4.    Rule 29 Statement;

5.    Interrogatories;

6.    Requests for Admission; and

7.    Requests for Production of Documents.

Please forward these documents to your attorney or insurer[1] within **20 days** so that an answer to the complaint can be filed can be made on your behalf and legal discovery timely filed.

Very truly yours,

George F. Leahy, Esq.

---

[1] Mary Smith- Claims Examiner
NBIS Construction & Transport Insurance Services, Inc.
Risk Management
2859 Paces Ferry Road
Suite 800
Atlanta, GA 30339
**NBIS Claim No.: 02-01-0003164**

# USPS Tracking™

 Customer Service ›

Have questions? We're here to help.

Only applicable to visual users. More Details Less Details
Tracking Number: 70030500000016220400

**delivered**

- Updated Delivery Day: Monday, March 9, 2015

**Product & Tracking Information**

**Postal Product:**

- Priority Mail 2-Day™

**Extra Svc:**

- o   Certified Mail™
- o   Return Receipt
- o   Up to $50 insurance included

Restrictions Apply **Priority Mail Insurance info icon**

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| March 23, 2015 , 8:56 am | Delivered | JERSEY CITY, NJ 07303 |

Your item was delivered at 8:56 am on March 23, 2015 in JERSEY CITY, NJ 07303.

| | | |
|---|---|---|
| March 9, 2015 , 7:45 pm | Notice Left (No Authorized Recipient Available) | NEW YORK, NY 10005 |
| March 9, 2015 , 10:49 am | Out for Delivery | NEW YORK, NY 10005 |
| March 9, 2015 , 10:39 am | Sorting Complete | NEW YORK, NY 10005 |

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| March 9, 2015 , 6:56 am | Arrived at Unit | NEW YORK, NY 10005 |
| March 6, 2015 , 2:33 am | Departed USPS Facility | BETHPAGE, NY 11714 |
| March 5, 2015 , 9:46 pm | Arrived at USPS Origin Facility | BETHPAGE, NY 11714 |
| March 5, 2015 , 5:25 am | Departed USPS Facility | NASHUA, NH 03063 |
| March 5, 2015 , 12:08 am | Arrived at USPS Origin Facility | NASHUA, NH 03063 |
| March 4, 2015 , 5:15 pm | Departed Post Office | NORTH ANDOVER, MA 01845 |
| March 4, 2015 , 8:57 am | Acceptance | NORTH ANDOVER, MA 01845 |

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. _15 - 0489_



_Alissa Freeman_ , Plaintiff(s)

v.

_Amquip Crane Rental, LLC et al_ , Defendant(s)

## SUMMONS

To the above-named Defendant: _Amquip Crane Rental, LLC_

You are hereby summoned and required to serve upon _George F. Wesley, Esq,_

plaintiff's attorney, whose address is _P.O. Box 15, West Boxford, MA 01885,_ an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, ~~Barbara J. Rouse~~ **Judith Fabricant**, Esquire, at Boston, the _4th_ day of
_March_, in the year of our Lord two thousand _2015_.

_Michael Joseph Donovan_

Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (—(1) TORT—) (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 20M-10/11

I HEREBY ATTEST AND CERTIFY ON
April 15, 2015 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _Margaret M. Elm_
Asst. Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.





**Suffolk County Sheriff's Department** • 132 Portland Street, Boston, MA 02114 • (617) 704-6999

*Suffolk, ss.*

March 23, 2015

I hereby certify and return that on 3/11/2015 at 2:40 PM I served a true and attested copy of the Summons, Complaint, Interrogatories, Request for Production of Documents, Cover Sheet, Request for Admissions, Rule 29 Statement in this action in the following manner: To wit, by delivering in hand to Dan Morriarty, Manager, agent, and person in charge at the time of service for Amquip Crane Rental, LLC, at 295 W. First Street South Boston, MA 02127. In this service hereof it was necessary and I actually used a motor vehicle 5 miles.   Attest/Copies ($5.00) Basic Service Fee (IH) ($30.00) Conveyance ($1.50) Postage and Handling ($1.00) Travel ($3.20) Total: $40.70

Deputy Sheriff  Richard Kennefick

*Deputy Sheriff*

**N.B.  TO PROCESS SERVER:–**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN**
**THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT**

Dated:_____, 201___

_____

_____

_____

manner (See Mass. R. Civ. P. 4 (d) (1–5)):

together with a copy of the complaint in this action, upon the within-named defendant, in the following

I hereby certify and return that on _____, 201___ I served a copy of the within summons,

**PROOF OF SERVICE OF PROCESS**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                    SUPERIOR COURT DEPARTMENT
                                CIVIL ACTION NO.:  2015-0489

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ALISSA FREEMAN,
        Plaintiff

vs.

AMQUIP CRANE RENTAL, LLC, and
TOWER GROUP COMPANIES/TOWER INSURANCE COMPANY /(NBIS
Construction & Transport Insurance Services, Inc. (third-party claims administrator)
        Defendants

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### *SUPPLEMENTAL* AFFIDAVIT OF COMPLIANCE OF GEORGE F. LEAHY, ATTORNEY FOR THE PLAINTIFF, UNDER MASS. R. CIV. P. 4(F)

I, George F. Leahy, attorney for the plaintiff, Alissa Freeman, pursuant to M.G.L. c. 223A, section 6(b) and Mass. R. Civ. P. 4(e)(3) hereby attest and swear that service of process was made upon:

The defendant, TOWER GROUP COMPANIES/TOWER INSURANCE COMPANY /(NBIS Construction & Transport Insurance Services, Inc. (third-party claims administrator):

> a.  By mailing a copy of the summons, plaintiff's complaint, civil action cover sheet, Rule 29 Statement, interrogatories, requests for admission, and requests for production of documents on **March 4, 2015**, postage prepaid- priority mail, certified mail, return receipt requested, to:

**Certified Mail Return Receipt Requested**
**Article Number: 7003-0500-0000-1622-0400**
Tower Group Companies
Tower Insurance Company
120 Broadway
31st Floor
New York, NY 10271

> which was received by the defendant on **March 23, 2015 , 8:56 am** (**Exhibit A** *attached hereto*)

Dated: March 26, 2015

The plaintiff, Alissa Freeman,
by her attorney,

_____
George F. Leahy, Esq.
BBO#: 289990
The Law Office of George F. Leahy
P.O. Box 15
West Boxford, MA 01885-0015
Phone: (978) 686-5600

I HEREBY ATTEST AND CERTIFY ON

April 15, 2015 ____, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
Asst. Clerk



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

POSTAL SERVICE
MAR '15
PM 5 L

• Sender: Please print your name, address, and ZIP+4 in this box •

George F. Leahy, Esq.
P.O. Box 15
West Boxford, MA 01885

MAR 26 2015
BY:

35001515

7003 0500 0000 1622 0400

CA 2015-0989

**SENDER: COMPLETE T...**                          ...VERY

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Tower Group Companies
Tower Insurance Company
120 Broadway
31 st Floor
New York, N.Y. 10271

3. Service Type
   ☑ Certified Mail  ☐ Express Mail
   ☐ Registered  ☐ Return Receipt for Merchandise
   ☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)  7003-0500-0000-1622-0400

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

**SENDER: COMPLETE T**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Tower Research Companies
Tower Aviation Company
120 Broadway
31 st Floor
New York, N.Y. 10271

2. Article Number
(Transfer from service label)   7003-0500-0000-1622-0400

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

**ERY**

A. Signature
X ☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☐ Certified Mail     ☐ Express Mail
   ☐ Registered         ☐ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

7003 0500 0000 1622 0400

# USPS Tracking™

 Customer Service ›

Have questions? We're here to help.

Only applicable to visual users. More Details Less Details
Tracking Number: 70030500000016220400

**delivered**

- Updated Delivery Day: Monday, March 9, 2015

**Product & Tracking Information**

**Postal Product:**

- Priority Mail 2-Day™

**Extra Svc:**

- ○ Certified Mail™
- ○ Return Receipt
- ○ Up to $50 insurance included

Restrictions Apply **Priority Mail Insurance info icon**

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| March 23, 2015 , 8:56 am | Delivered | JERSEY CITY, NJ 07303 |

Your item was delivered at 8:56 am on March 23, 2015 in JERSEY CITY, NJ 07303.

| | | |
|---|---|---|
| March 9, 2015 , 7:45 pm | Notice Left (No Authorized Recipient Available) | NEW YORK, NY 10005 |
| March 9, 2015 , 10:49 am | Out for Delivery | NEW YORK, NY 10005 |
| March 9, 2015 , 10:39 am | Sorting Complete | NEW YORK, NY 10005 |

| DATE & TIME | STATUS OF ITEM | LOCATION |
| --- | --- | --- |
| March 9, 2015 , 6:56 am | Arrived at Unit | NEW YORK, NY 10005 |
| March 6, 2015 , 2:33 am | Departed USPS Facility | BETHPAGE, NY 11714 |
| March 5, 2015 , 9:46 pm | Arrived at USPS Origin Facility | BETHPAGE, NY 11714 |
| March 5, 2015 , 5:25 am | Departed USPS Facility | NASHUA, NH 03063 |
| March 5, 2015 , 12:08 am | Arrived at USPS Origin Facility | NASHUA, NH 03063 |
| March 4, 2015 , 5:15 pm | Departed Post Office | NORTH ANDOVER, MA 01845 |
| March 4, 2015 , 8:57 am | Acceptance | NORTH ANDOVER, MA 01845 |

*The Law Office of George F. Leahy*
*P.O. Box 15*
*West Boxford, Massachusetts 01885-0015*
Telephone:  (978) 686-5600  Facsimile:  (978) 686-5600

March 4, 2015

**Certified Mail Return Receipt Requested**
**Article Number: 7003-0500-0000-1622-0400**
Tower Group Companies
Tower Insurance Company
120 Broadway
31st Floor
New York, NY 10271



**Re: Alissa Freeman v. Amquip Crane Rental, LLC and Tower Group Companies/**
**Tower Insurance Company, et al.**
**Suffolk Superior Court, C.A. No.: 2015-0489**

**Date of Loss:     October 8, 2013 at approximately 2:00 p.m.**
**Amquip Order No.: 312318**
**Insured Employer: Greenwood Industries, P.O. Box 2800, Worcester, MA 01613**
**Locus: Boston Wharf Tower, Melcher Street, Boston, MA 02127**
**W.C. Insurer: Chartis/Granite State Ins. Co.**
**W.C. Claim No. 555-109205**
**NBIS Claim No.: 02-01-0003164**
**Subject: Tort Claim**

Dear Sir or Madam:

In connection with the above-referenced matter, enclosed herewith for service of process under the **Massachusetts Long Arm Statute, M.G. L. c. 223A, sec. 1 et seq**., please find the following:

1.     One Summons;

2.     Civil Action Cover Sheet;

3.     Plaintiff's Complaint;

4.     Rule 29 Statement;

5.     Interrogatories;

6.     Requests for Admission; and

7.     Requests for Production of Documents.

Please forward these documents to your attorney or insurer[1] within **20 days** so that an answer to the complaint can be filed can be made on your behalf and legal discovery timely filed.

Very truly yours,

George F. Leahy, Esq.

---

[1] Mary Smith- Claims Examiner
NBIS Construction & Transport Insurance Services, Inc.
Risk Management
2859 Paces Ferry Road
Suite 800
Atlanta, GA 30339
**NBIS Claim No.: 02-01-0003164**

COMMONWEALTH OF MASSACHUSETTS                6

SUFFOLK, ss.                          SUPERIOR COURT DEPARTMENT
                                      CIVIL ACTION NO.:  2015-0489 *A*

* * * * * * * * * * * * * * * * * * * * * * * *

ALISSA FREEMAN,
       Plaintiff

vs.

AMQUIP CRANE RENTAL, LLC, and
TOWER GROUP COMPANIES/TOWER INSURANCE COMPANY /(NBIS
Construction & Transport Insurance Services, Inc. (third-party claims administrator)
       Defendants

* * * * * * * * * * * * * * * * * * * * * * * *

### PLAINTIFF, ALISSA FREEMAN'S, MOTION TO DEFAULT THE DEFENDANT, AMQUIP CRANE RENTAL, LLC

Pursuant to Mass. R. Civ. P.  55(a) the plaintiff moves for default as to the

defendant, Amquip Crane Rental, LLC.

As grounds therefore the plaintiff states that service of process was made on this

defendant on or about March 11, 2015 and that the requisite 20 days have elapsed with

without this defendant filing an answer or other responsive pleading and default is

merited.

Dated: April 1, 2015                  The plaintiff, Alissa Freeman,
                                      by her attorney,

I HEREBY ATTEST AND CERTIFY ON
April 15, 2015 ___, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,          George F. Leahy, Esq.
AND IN MY LEGAL CUSTODY.                BBO#: 289990
                                        The Law Office of George F. Leahy
    MICHAEL JOSEPH DONOVAN              P.O. Box 15
    CLERK / MAGISTRATE                  West Boxford, MA 01885-0015
    SUFFOLK SUPERIOR CIVIL COURT        Phone: (978) 686-5600
    DEPARTMENT OF THE TRIAL COURT

BY: _____
    Asst. Clerk

## CERTIFICATE OF SERVICE

I, George F. Leahy, hereby certify that on the 1st day of April 2015, I served a copy of this document by mailing it, postage prepaid mail, to the following:

*Courtesy copy:*
Mary Smith- Claims Examiner
NBIS Construction & Transport Insurance Services, Inc.
Risk Management
2859 Paces Ferry Road
Suite 800
Atlanta, GA 30339

Francis J. Deasey, Esq.
Deasey, Mahoney, Valentini & North, Ltd.
Suite 3400
1601 Market Street
Philadelphia, PA 19103-2301

George F. Leahy, Esq.